# First National Bank of Clarion *versus* Gruber.

1. Neither by set-off nor original action can interest, over the legal rate, paid to a national bank, be recovered except by way of penalty as prescribed by the Act of Congress of June 3d 1864.

2. The courts of this state have jurisdiction to recover said penalty under the provisions of the national statute above referred to. Bletz v. The Columbia National Bank, 6 Norris 87, followed.

3. There are no state banks of issue in Pennsylvania authorized to take more than six per cent. interest, and national banks cannot therefore claim such privilege.

4. Where in an action to recover usurious interest paid it appears that the plaintiff was the beneficial owner of the notes discounted, it cannot be shown that the other joint maker claimed the right to recover said usurious interest and had brought suit therefor in another court.

October 20th 1879.   Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, TRUNKEY and STERRETT, JJ.   GREEN, J., absent.

Error to the Court of Common Pleas of *Clarion county :* Of October and November Term 1879, No. 112.

Debt by John Gruber against the First National Bank of Clarion.

This suit was brought to recover from the defendant double the amount of all payments alleged to have been made by the plaintiff to the defendant as usurious interest, within two years previous to the inception of the action, and also all excess above six per cent. alleged to have been paid during the additional period of four years prior to the 4th of March 1874.   The plaintiff declared specially for the double interest, and added the common counts on which to recover the excess.   On the 24th of March 1879, defendant presented a petition to remove the same to the Circuit Court of the United States, which was refused.

The plaintiff claimed to recover the discount on four different lines of notes ; the first notes of John Gruber, the plaintiff, which began on the 29th of March 1870, and were either paid off or embraced on the 7th of January 1872, in note given by John and Henry Gruber, which constituted the second line of notes, and this line was continued by renewals until the 12th of June 1875, when it was closed by a judgment on the last of the notes, being $2238, and the judgment was not paid until. the 28th of August 1876, nearly five months after the bringing of this suit, and was then paid principally out of the proceeds of a sheriff's sale of Henry Gruber's property.   The third line of notes were those of John Gruber, Henry Gruber and Samuel Newell, which began on the 3d of October 1873, and after a succession of renewals, on the 27th of November 1875, was closed by a judgment in favor of the bank of $348.30, which was not paid until the 28th of August 1876, and was then paid out of proceeds of sale of real estate principally of Henry Gruber.   The fourth line of notes were those of Cook & Co. and John Gruber, endorsed by R. Rulofson, which Rulofson had discounted at the bank, but charged the discount against John Gruber on a settlement Rulofson had with Gruber.   On these several lines of notes, which constituted the greater part of the plaintiff's claim, discount was charged generally at the rate of twelve per cent.   Sometimes the discount was paid at the time of the purchase of the notes, sometimes it was reserved out of the amount given for the notes, and at other times it was added into the notes, and went along the line of successive renewals, till they were closed in judgments or paid.   Excluding the notes of Cook & Co. and John Gruber, that Rulofson had discounted, the whole amount of discount actually paid on the several notes claimed by plaintiff between the 4th of March 1874, and the 4th of March 1876, was $217.70 ; the whole amount added into or reserved out of notes

during the same period, was $62.50 ; the whole amount of discounts paid between the 4th of March 1870, and the 4th of March 1874, was $1064.72 ; and the whole amount added in or reserved out during the same period, was $264.28, and the greater part of all this was on the joint notes of John and Henry Gruber. The plaintiff in this case claimed this last line of notes was discounted for his benefit, and Henry Gruber claimed that the discount was paid by him, and had brought suit for the same discounts, which was offered to be proven by a certified copy of the record of the Circuit Court of the United States, in the case of Henry Gruber against the same defendant, but the testimony was excluded by the court.

The defendant also pleaded specially and proved the incorporation of eighteen banks which were doing business at the time claimed for by plaintiff in this case, that were authorized by their charters to take such rates of interest as might be agreed upon by said banks and the borrowers. A copy of these charters was included in defendant's special plea. These banks, it was claimed on part of defendant, were banks of issue. The rate of interest charged by the defendant in this case it was alleged was only the rate agreed upon between borrower and lender, and except that which was included in the judgments was voluntarily paid by the person for whom the paper was discounted. The plaintiff did not personally pay any discount on the S. Newell and Gruber line of notes except what he paid on a judgment recovered on the last of the line, and that was paid on the judgment, not as discount.

At the trial before Jenks, P. J., the court admitted in evidence the note of John Gruber and Henry Gruber, overruling an objection that it was a joint note, while this was an individual action. (First assignment of error.)

Defendant proposed to prove " that Henry Gruber, who was the joint maker in a line of notes for the payment of money for which the plaintiff now claims, alleges and claims that he is the party to whom the right of action for the payment of discount or usury belongs, and has actually brought suit for the same in the Circuit Court of the United States, together with the record of the Circuit Court of the United States of the suit brought."

Objected to. By the court : " We will not receive the evidence unless it is followed by testimony going to show that the present plaintiff is in some way identified with making such claims ; if he has we will admit the evidence." (Second assignment.)

The following assignments of error will show the other questions raised :

Third assignment : The court erred in their answer to defendant's tenth point, that there can be no recovery under the evidence as to any moneys claimed in this action, except as to the penalty.

Ans. " We think there can be recovery for such moneys as were .

paid by the plaintiff as interest or discount, where such moneys so paid were in excess of 6 per cent. He would be entitled to recover the excess over 6 per cent., so paid during the four years prior to the 1st of March 1874, and he would be entitled to recover double the amount where it was received as interest or discount, and it was usurious where it was paid within two years from the time this suit was brought."

Fourth: In their answer to defendant's fourth point, that as to all notes on which excessive interest may have been paid prior to the 4th day of September 1875, which were paid prior to that time, the plaintiff's right to recover is barred by the limitation of the Act of 28th of May 1858.

Ans. "We decline to answer this point as requested."

Fifth: In their answer to defendant's fifth point, that the banks whose charters are set forth in defendant's special plea, filed March 24th 1879, are banks of issue.

Ans. "We have already stated that we do not think they are banks of issue within the meaning of the term used in the Act of Congress. We do not think they are within the meaning of the terms used in this suit. To so hold would involve consequences which, in our opinion, it would not be just to impute to the highest legislative body in the United States. To so hold would, as in favor of national banks, operate as a practical repeal of our state usury laws. We might refer to other reasons, but we think it unnecessary at present. Suffice it to say that in our judgment, as we have already stated, they are not banks of issue within the meaning of the terms used in the Act of Congress, nor do we think they are intended to include the banks that have been given in evidence. We think Congress used these terms as referring to banks of a different character entirely."

Sixth: In their answer to plaintiff's fifth point, that the banks created by the Acts of Assembly given in evidence in this case, are not banks of issue, and not within the exception in the Act of Congress creating national banks.

Ans. "We answer this point in the affirmative. We do not think the banks given in evidence by the defendant are banks of issue within the meaning of the terms used in the Acts of Congress."

Seventh: In their answer to defendant's sixth point, that as the banks in defendant's fifth point mentioned are authorized by their charter to charge such a rate of interest as may be agreed upon between the parties, the defendant in this case had a right to charge at any rate agreed upon between the plaintiff and defendant.

Ans. "We decline to answer this point as requested, and refer to the answer to defendant's fifth point.

Eighth: In answer to the defendant's eighth point, that if the defendant did not take or receive any other or greater rate of inter-

est than was agreed upon between the plaintiff and defendant, the verdict of the jury should be for the defendant.

Ans. "We decline to answer this point as requested, and for further answer refer you to answer to defendant's fifth point."

Ninth: In their answer to plaintiff's fourth point, that when a national bank loans money and takes a security for payment of same on time, payment of illegal or usurious interest for same, either at the time of the loan or afterwards, within two years of suit brought, such bank becomes liable for the penalty, and there can be a recovery for such penalty, even if there be no part payment of the principal.

Ans. "Where it receives money as interest or discount, and the same is usurious, and the same was received within two years before the commencement of this suit, they can recover it. We thus answer this point in the affirmative."

Tenth: In their answer to the defendant's twelfth point, that if the several judgments with which the several lines of notes were closed up, were each larger in amount than all discounts paid by plaintiff on, or added into, the several notes in said lines, the verdict of the jury should be for the defendant.

Ans. "We have already said that if money was actually paid as interest or discount, and the same was in excess of six per cent., or in other words was usurious, for such money actually paid or received, there could be recovery, but not where there was no actual payment of money in that form."

Eleventh: In their answer to the defendant's first point, that the action to recover by the plaintiff from the defendant twice the amount of interest paid, under section 5198 of the Revised Statutes of the United States, is an action to recover a penalty.

Ans. "We decline to answer this point as requested."

Twelfth: In their answer to the defendant's second point, that Congress has no power to confer on the state courts jurisdiction to recover such penalty, and as to such penalty this action will not lie.

Ans. "We decline to answer this point as requested."

Thirteenth: In their answer to the defendant's third point, that the claim of the plaintiff for penalty under an Act of Congress, and for the recovery of excess interest are incongruous and there can be no recovery for both of said demands in this action.

Ans. "We decline to answer this point as requested."

Fourteenth: In their answer to plaintiff's second point, that the judgment entered by defendant against John Gruber and Henry Gruber is not a bar to plaintiff's recovery for the penalty under the Act of Congress, or for excess of interest or discount paid, when such interest and discount were not included in and made a part of said judgment.

Ans. "We answer this point in the affirmative. But where it

[First Nat. Bank of Clarion *v.* Gruber.]

was included in the judgment, the judgment would control. It is the amount actually paid—that the evidence shows is actually paid—can be recovered."

Fifteenth: In their answer to defendant's thirteenth point, that under all the evidence in this case, the verdict of the jury should be for the defendant.

• Ans. " We answer this point in the negative."

Sixteenth: The court erred in the following portion of the general charge: " Under the instructions given, the jury can only find against the defendant; first, so much as has actually been received by them between the 1st day of March 1870 and 1874—so much as has actually been received between the 1st day of March 1870 and 1874, in excess of 6 per cent., when the sum received was received as interest or discount, and interest on that sum from the time it was paid until this date."

Seventeenth: In refusing to grant the prayer of defendant to remove the cause to the Circuit Court of the United States.

Verdict for plaintiff for $1661.01, when defendant took this writ, and alleged that the court erred as set forth in the above assignments of error.

*Wilson & Jenks,* for plaintiff in error.—The action should have been joint. If any liability was incurred by the bank, it was a joint liability, and the note should have been excluded. No action can be maintained to recover back money voluntarily paid, with knowledge or means of knowledge of the facts, and without fraud: Real Estate Savings Institution *v.* Linder and Wife, 24 P. F. Smith 371; Taylor *v.* Board of Health, 7 Casey 73; Ege *v.* Koontz, 3 Barr 109.

No action will lie to recover usurious interest, except under the provisions of the Act of May 28th 1858, Pamph. L. 622, and the Act of Congress of 1864. This Act of Congress provides a specific remedy, and it is usurping the functions of legislation for a court to say that the party injured shall have an additional action for money had and received to recover back the whole or the half of the interest paid during the period which preceded the two years provided by the statute, within which action should be brought: Brown *v.* Second National Bank of Erie, 22 P. F. Smith 209; Overholt *v.* National Bank of Mount Pleasant, 1 Norris 490; Lucas *v.* Government National Bank, 28 P. F. Smith 292; Meloney *v.* Third National Bank, 5 W. N. C. 363; Bank *v.* Roseberry, 31 P. F. Smith 309.

The banks set forth in defendant's plea are banks of issue, and have the right to contract with the borrower for the rate of interest, and under the Act of Congress national banks have the same rights as these banks of issue: First National Bank of Mount Pleasant *v.* Duncan & Bro., 6 W. N. C. 159; Same *v.* Tinstsman, Pitts. Leg.

[First Nat. Bank of Clarion v. Gruber.]

Jour., Jan'y 29th 1879; 36 Leg. Int. 228; Tiffany v. National Bank of Missouri, 18 Wall. 409.

If the line of notes be reduced to judgment, the judgment is a bar to the recoupment of any interest, excess or payment made therein prior to the judgment. This principle is recognised in numerous cases; among others, Verner v. Carson, 16 P. F. Smith 440; Hopkins v. West, 2 Norris 109; Rutherford v. Boyer, 3 Id. 347; Walter v. Breisch, 5 Id. 457; 2 Potter on Corp. 552.

*William L. Corbett*, for defendant in error.—The loan was made to John Gruber and for his benefit. He paid the interest, and therefore Henry Gruber had no title on which he could recover the penalty over the borrower. Parties to contracts where illegal interest is extorted do not stand *in pari delicto*, the necessities of the borrower making him an easy victim of the usurer. The Act of Congress, where interest is contracted for or received in excess of the rate allowed by the laws of the state, declares such interest forfeited, and inflicts a penalty for such extortion. In such cases a prohibition of such contracts is implied: Mitchell v. Smith, 1 Binn. 110; s. c. 4 Dall. 269; 4 Yeates 84.

A contract made about a matter prohibited by statute is void, although not expressly declared to be so: Seidenbender v. Charles, 4 S. & R. 151; Columbia Bank and Bridge Co. v. Haldeman, 7 W. & S. 233; Morris Run Coal Co. v. Barclay Coal Co., 18 P. F. Smith 173. Such contracts are void, absolutely void, and not merely voidable. The parties to the contract not standing *in pari delicto*, the party paying such interest is entitled to recover: Thomas v. Shoemaker, 6 W. & S. 179; Lucas v. Government Nat. Bank, *supra*.

All corporations are creatures of positive law, and derive their power from their charters or the laws under which they are created. Outside the charter or laws under which they are created, they have no power to act: Commonwealth v. Erie & North-East Railroad Co., 3 Casey 339; Diligent Fire Co. v. Commonwealth, 25 P. F. Smith 291; Bank of Kentucky v. Schuylkill Bank, 1 Parsons 180.

The acts recited in the plea do not give any power to issue notes in the character of bank bills, for the purpose of circulation or as a currency; nor is there any power conferred from which such is necessarily implied. No claim has heretofore been made of such power by these corporations or their officers. On the contrary, they have heretofore acted as banks of discount and deposit, and have been considered by the legislature, the judiciary and the people of the state as possessing only the power of such banks. They have not claimed or exercised the powers of banks of issue.

Mr. Justice GORDON delivered the opinion of the court, October 27th 1879.

[First Nat. Bank of Clarion *v.* Gruber.]

The evidence in this case establishes the fact that John Gruber was the beneficial owner of the notes produced on the trial, and that for him alone were they discounted by the bank. It hence follows that any claim that Henry Gruber might have set up to the penalty, growing out of the illegal discounts, was without foundation, and was properly disregarded.

In like manner, the learned judge of the court below, properly ruled that the banks created by the several Acts of Assembly, given in evidence by the defendant, were not banks of issue. These acts specifically define the powers of the several corporations created by them, but among them is not found the power to issue circulating notes, commonly known as bank notes. But the rule is, that as corporations are purely statutory creatures, powers not specifically granted are to be taken as withheld, and cannot be raised by implication unless they are ancillary to, and necessary for, the proper exercise of those granted. The defendant, then, having failed to show that the banks referred to were banks of issue, it cannot, under the act of Congress, claim the right of those banks to take more than six per cent. interest on loans and discounts.

All other points, put to the court below, were well answered, except the defendant's tenth point and others involving the same principle. That point reads as follows : " There can be no recovery, under the evidence, as to moneys claimed in this action, except as to the penalty." The answer was : " We think there can be recovery for such moneys as were paid by the plaintiff as interest or discount where such moneys so paid were in excess of six per cent." By a recent decision of the Supreme Court of the United States this would seem to be error, but it is an error of this court rather than of the court below, for our decisions in Lucas *v.* The Bank, and kindred cases, were followed.

The case to which we refer is Barnett *v.* The National Bank, 8 Otto 555, a case very much like the one under consideration. . The defence, inter alia, was that Barnett and Whitesides, the drawees and acceptors of the bill in suit, were borrowers from the bank as early as January 11th 1866 ; that the indebtedness was continuous and unbroken from the 8th of April of that year ; that it was at no time less than $4000, and at one period amounted to $36,000 ; that at the time of the assignment of the drawees to Barnett & Craig, who intervened and were made parties, the indebtedness was $28,000 on bills of exchange ; that the bank had taken not less than $5000 in excess of the legal rate of interest ; that for evasion the bills were arranged in series, and that each series was terminated, from time to time, by refusing to renew and discounting a new bill, the proceeds of which were applied in payment of the prior terminating one ; that the bank had received satisfaction of all the bills but the one in suit, and that there was nothing due from the defendants. On demurrer, this plea was overruled by the

[First Nat. Bank of Clarion *v.* Gruber.]

court below, and this ruling was affirmed by the Supreme Court. Mr. Justice Swayne, delivering the opinion of the court, in commenting upon the statute, says : "Two categories are thus defined, and the consequences denounced :—

"1. Where illegal interest has been knowingly stipulated for but not paid, there only the sum lent without interest can be recovered.

"2. Where such illegal interest has been paid, then twice the amount so paid can be recovered in a penal action of debt, or suit in the nature of such action, against the offending bank, brought by the persons paying the same or their legal representatives."

And further on in the same opinion : "In the first defence the payment of the usurious interest is distinctly averred, and it is sought to apply it by way of offset or payment to the bill of exchange in suit. In our analysis of the statute we have seen that this could not be done."

From this it appears certain that neither by set-off nor original action can interest, over legal rate, paid to a national bank, be recovered except by the way of penalty, as prescribed by the act of Congress of June 3d 1864.

We have but to add, that the case of Bletz *v.* The Columbia National Bank, 6 Norris 87, rules that the courts of this state have jurisdiction of suits to recover twice the amount of illegal interest, under the provisions of the national statute above referred to.

The judgment is reversed and a new <em>venire</em> awarded.