TESTA ᴇᴛ ᴀʟ. *v.* KATT.

No. 431.   Argued February 14, 1947.—Decided March 10, 1947.

*Acting Solicitor General Washington* argued the cause for petitioner. With him on the brief were *Frederick Bernays Wiener, J. Raymond Dubee, William E. Remy, David London, Samuel Mermin* and *Albert J. Rosenthal.*

*Paul M. Segal* argued the cause for respondent. With him on the brief were *Henry G. Fischer, Bernard A. Helfat, Irving R. Panzer* and *John W. Willis.*

MR. JUSTICE BLACK delivered the opinion of the Court.

Section 205 (e)[1] of the Emergency Price Control Act provides that a buyer of goods at above the prescribed ceiling price may sue the seller "in any court of competent jurisdiction" for not more than three times the amount of the overcharge plus costs and a reasonable attorney's fee. Section 205 (c)[2] provides that federal district courts shall have jurisdiction of such suits "concurrently with State and Territorial courts." Such a suit under § 205 (e) must be brought "in the district or county in which the defendant resides or has a place of business . . . ."

The respondent was in the automobile business in Providence, Providence County, Rhode Island. In 1944 he sold an automobile to petitioner Testa, who also resides

---

[1] "(e) If any person selling a commodity violates a regulation, order, or price schedule prescribing a maximum price or maximum prices, the person who buys such commodity for use or consumption other than in the course of trade or business may, within one year from the date of the occurrence of the violation, except as hereinafter provided, bring an action against the seller on account of the overcharge. In such action, the seller shall be liable for reasonable attorney's fees and costs as determined by the court, plus whichever of the following sums is the greater: (1) Such amount not more than three times the amount of the overcharge, or the overcharges, upon which the action is based as the court in its discretion may determine, or (2) an amount not less than $25 nor more than $50, as the court in its discretion may determine: . . . . Any action under this subsection by either the buyer or the Administrator, as the case may be, may be brought in any court of competent jurisdiction. . . ." 56 Stat. 34 as amended, 58 Stat. 632, 640, 50 U. S. C. App., Supp. V, § 925 (e).

[2] "The district courts shall have jurisdiction of criminal proceedings . . . and, concurrently with State and Territorial courts, of all other proceedings under section 205 of this Act. . . ." 56 Stat. 32, as amended, 58 Stat. 632, 640, 50 U. S. C. App., Supp. V, § 925 (c).

in Providence, for $1100, $210 above the ceiling price. The petitioner later filed this suit against respondent in the State District Court in Providence. Recovery was sought under § 205 (e). The court awarded a judgment of treble damages and costs to petitioner. On appeal to the State Superior Court, where the trial was *de novo,* the petitioner was again awarded judgment, but only for the amount of the overcharge plus attorney's fees. Pending appeal from this judgment, the Price Administrator was allowed to intervene. On appeal, the State Supreme Court reversed, 71 R. I. 472, 47 A. 2d 312. It interpreted § 205 (e) to be "a penal statute in the international sense." It held that an action for violation of § 205 (e) could not be maintained in the courts of that State. The State Supreme Court rested its holding on its earlier decision in *Robinson* v. *Norato,* 71 R. I. 256, 43 A. 2d 467 (1945) in which it had reasoned that: A state need not enforce the penal laws of a government which is foreign in the international sense; § 205 (e) is treated by Rhode Island as penal in that sense; the United States is "foreign" to the State in the "private international" as distinguished from the "public international" sense; hence Rhode Island courts, though their jurisdiction is adequate to enforce similar Rhode Island "penal" statutes, need not enforce § 205 (e). Whether state courts may decline to enforce federal laws on these grounds is a question of great importance. For this reason, and because the Rhode Island Supreme Court's holding was alleged to conflict with this Court's previous holding in *Mondou* v. *New York, N. H. & H. R. Co.,* 223 U. S. 1, we granted certiorari. 329 U. S. 703.[3]

---

[3] Pursuant to Rhode Island practice, the State Supreme Court remitted the case and the record to the Superior Court. That court then entered judgment in accordance with the Supreme Court's

For the purposes of this case, we assume, without decid-
ing, that § 205 (e) is a penal statute in the "public inter-
national," "private international," or any other sense.
So far as the question of whether the Rhode Island
courts properly declined to try this action, it makes no
difference into which of these categories the Rhode Island
court chose to place the statute which Congress has passed.
For we cannot accept the basic premise on which the
Rhode Island Supreme Court held that it has no more
obligation to enforce a valid penal law of the United
States than it has to enforce a penal law of another state
or a foreign country.   Such a broad assumption flies in
the face of the fact that the States of the Union constitute
a nation.   It disregards the purpose and effect of Article
VI of the Constitution which provides: "This Consti-
tution, and the Laws of the United States which shall be
be made in Pursuance thereof; and all Treaties made, or
which shall be made, under the Authority of the United
States, shall be the supreme Law of the Land; and the
Judges in every State shall be bound thereby, any Thing
in the Constitution or Laws of any State to the Contrary
notwithstanding."

It cannot be assumed, the supremacy clause consid-
ered, that the responsibilities of a state to enforce the
laws of a sister state are identical with its responsibilities
to enforce federal laws.   Such an assumption represents
an erroneous evaluation of the statutes of Congress and
the prior decisions of this Court in their historic setting.
Those decisions establish that state courts do not bear the
same relation to the United States that they do to foreign
countries.   The first Congress that convened after the
Constitution was adopted conferred jurisdiction upon the

opinion.   It is the judgment of the Superior Court which petitioner
asked us to review on certiorari.   See *Joslin Co.* v. *Providence*, 262
U. S. 668, 673.

state courts to enforce important federal civil laws,[4] and succeeding Congresses conferred on the states jurisdiction over federal crimes and actions for penalties and forfeitures.[5]

Enforcement of federal laws by state courts did not go unchallenged. Violent public controversies existed throughout the first part of the Nineteenth Century until the 1860's concerning the extent of the constitutional supremacy of the Federal Government. During that period there were instances in which this Court and state courts broadly questioned the power and duty of state courts to exercise their jurisdiction to enforce United States civil and penal statutes or the power of the Federal Government to require them to do so.[6] But after the fundamental issues over the extent of federal supremacy had been resolved by war, this Court took occasion in 1876 to review the phase of the controversy concerning the relationship of state courts to the Federal Government. *Claflin* v. *Houseman,* 93 U. S. 130. The opinion of a unanimous court in that case was strongly buttressed by historic references and persuasive reasoning. It repudi-

---

[4] Judiciary Act of 1789, 1 Stat. 73, 77 (suits by àliens for torts committed in violation of federal laws and treaties; suits by the United States).

[5] 1 Stat. 376, 378 (1794) (fines, forfeitures and penalties for violation of the License Tax on Wines and Spirits) ; 1 Stat. 373, 375 (1794) (the Carriage Tax Act) ; 1 Stat. 452 (1796) (penalty for purchasing guns from Indians) ; 1 Stat. 733, 740 (1799) (criminal and civil actions for violation of the postal laws). See Warren, *Federal Criminal Laws and the State Courts,* 38 Harv. L. Rev. 545; Barnett, *The Delegation of Federal Jurisdiction to State Courts,* 3 Selected Essays on Constitutional Law 1202 (1938).

[6] See *e. g., Martin* v. *Hunter's Lessee,* 1 Wheat. 304, 334–337; *United States* v. *Bailey,* 9 Pet. 238, 259–260; *Prigg* v. *Pennsylvania,* 16 Pet. 539, 615; *Fox* v. *Ohio,* 5 How. 410, 438; *United States* v. *Lathrop,* 17 Johns. (N. Y.) 4 (1819). See also Warren, *supra,* 580–584.

ated the assumption that federal laws can be considered by the states as though they were laws emanating from a foreign sovereign. Its teaching is that the Constitution and the laws passed pursuant to it are the supreme laws of the land, binding alike upon states, courts, and the people, "any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." [7] It asserted that the obligation of states to enforce these federal laws is not lessened by reason of the form in which they are cast or the remedy which they provide. And the Court stated that "If an act of Congress gives a penalty to a party aggrieved, without specifying a remedy for its enforcement, there is no reason why it should not be enforced, if not provided otherwise by some act of Congress, by a proper action in a State court." *Id.* at 137. And see *United States* v. *Bank of New York,* 296 U. S. 463, 479.

The *Claflin* opinion thus answered most of the arguments theretofore advanced against the power and duty of state courts to enforce federal penal laws. And since that decision, the remaining areas of doubt have been steadily narrowed.[8] There have been statements in cases concerned with the obligation of states to give full faith and credit to the proceedings of sister states which suggested a theory contrary to that pronounced in the *Claflin* opinion.[9] But when in *Mondou* v. *New York, N. H. & H. R. Co.,* 223 U. S. 1, this Court was presented with a case

---

[7] U. S. Const. Art. VI. See also *Ex parte Siebold,* 100 U. S. 371, 392–394.

[8] *Tennessee* v. *Davis,* 100 U. S. 257; *Mondou* v. *New York, N. H. & H. R. Co.,* 223 U. S. 1; *Minneapolis & St. L. R. Co.* v. *Bombolis,* 241 U. S. 211; *McKnett* v. *St. Louis & S. F. R. Co.,* 292 U. S. 230; *Baltimore & O. R. R.* v. *Kepner,* 314 U. S. 44; *Miles* v. *Illinois C. R. Co.,* 315 U. S. 698; *Herb* v. *Pitcairn,* 324 U. S. 117, 121–123; 325 U. S. 77.

[9] See n. 10, *infra.*

testing the power and duty of states to enforce federal laws, it found the solution in the broad principles announced in the *Claflin* opinion.

The precise question in the *Mondou* case was whether rights arising under the Federal Employers' Liability Act, 36 Stat. 291, could "be enforced, as of right, in the courts of the States when their jurisdiction, as fixed by local laws, is adequate to the occasion . . ." *Id.* at 46. The Supreme Court of Connecticut had decided that they could not. Except for the penalty feature, the factors it considered and its reasoning were strikingly similar to that on which the Rhode Island Supreme Court declined to enforce the federal law here involved. But this Court held that the Connecticut court could not decline to entertain the action. The contention that enforcement of the congressionally created right was contrary to Connecticut policy was answered as follows:

> "The suggestion that the act of Congress is not in harmony with the policy of the State, and therefore that the courts of the State are free to decline jurisdiction, is quite inadmissible, because it presupposes what in legal contemplation does not exist. When Congress, in the exertion of the power confided to it by the Constitution, adopted that act, it spoke for all the people and all the States, and thereby established a policy for all. That policy is as much the policy of Connecticut as if the act had emanated from its own legislature, and should be respected accordingly in the courts of the State." *Mondou* v. *New York, N. H. & H. R. Co., supra* at 57.

So here, the fact that Rhode Island has an established policy against enforcement by its courts of statutes of other states and the United States which it deems penal, cannot be accepted as a "valid excuse." *Cf. Douglas* v.

*New York, N. H. & H. R. Co.*, 279 U. S. 377, 388.[10]   For the policy of the federal Act is the prevailing policy in every state.   Thus, in a case which chiefly relied upon the *Claflin* and *Mondou* precedents, this Court stated that a state court cannot "refuse to enforce the right arising from the law of the United States because of conceptions of impolicy or want of wisdom on the part of Congress in having called into play its lawful powers."   *Minneapolis & St. L. R. Co.* v. *Bombolis,* 241 U. S. 211, 222.

The Rhode Island court in its *Robinson* decision, on which it relies, cites cases of this Court which have held that states are not required by the full faith and credit clause of the Constitution to enforce judgments of the courts of other states based on claims arising out, of penal statutes.[11]   But those holdings have no relevance here, for this case raises no full faith and credit question. Nor need we consider in this case prior decisions to the effect that federal courts are not required to enforce state penal laws.   Compare *Wisconsin* v. *Pelican Ins. Co.,* 127 U. S. 265, with *Massachusetts* v. *Missouri,* 308 U. S. 1, 20.

---

[10] It has been observed that the historic origin of the concept first expressed in this country by Chief Justice Marshall in *The Antelope,* 10 Wheat. 66, 123, that "The courts of no country execute the penal laws of another . . ." lies in an earlier English case, *Folliott* v. *Ogden,* 1 H. Bl. 124 (1789), aff'd., *Ogden* v. *Folliott,* 3 T. R. 726 (1790), 4 Bro. P. C. 111.   In that case the English courts refused to enforce an American Revolutionary statute confiscating property of loyal British subjects on the ground that English courts must refuse to enforce such penal statutes of a foreign enemy.   It has been observed of this case that "of course they could as well have spoken of local public policy, and have reached the same result as surely."   Leflar, *Extrastate Enforcement of Penal and Governmental Claims,* 46 Harv. L. Rev. 193, 195 (1932).   See *Griffin* v. *McCoach,* 313 U. S. 498; *cf. Hines* v. *Lowrey,* 305 U. S. 85.

[11] See *e. g., Huntington* v. *Attrill,* 146 U. S. 657; *Anglo-American Provision Co.* v. *Davis Provision Co. No. 1,* 191 U. S. 373; *Kenney* v. *Supreme Lodge,* 252 U. S. 411.

For whatever consideration they may be entitled to in the field in which they are relevant, those decisions did not bring before us our instant problem of the effect of the supremacy clause on the relation of federal laws to state courts. Our question concerns only the right of a state to deny enforcement to claims growing out of a valid federal law.

It is conceded that this same type of claim arising under Rhode Island law would be enforced by that State's courts. Its courts have enforced claims for double damages growing out of the Fair Labor Standards Act.[12] Thus the Rhode Island courts have jurisdiction adequate and appropriate under established local law to adjudicate this action.[13] Under these circumstances the State courts are not free to refuse enforcement of petitioners' claim. See *McKnett* v. *St. Louis & S. F. R. Co.,* 292 U. S. 230; and compare *Herb* v. *Pitcairn,* 324 U. S. 117; 325 U. S. 77. The case is reversed and the cause is remanded for proceedings not inconsistent with this opinion.

*Reversed.*

---

[12] *Newman* v. *Geo. A. Fuller Co.,* 72 R. I. 113, 48 A. 2d 345.

[13] Gen. Laws R. I. (1938) c. 500, § 28; c. 525, § 7; c. 631, § 4.