## Porter v. Arnold et ux.

*Samuel M. Tollen*, for plaintiff.
*Clarence D. Bell*, for defendants.

SWENEY, J., March 22, 1948.—This case comes before us upon defendants' preliminary objections to plaintiff's complaint in an action of assumpsit to recover treble damages, and reasonable attorney's fees and costs, pursuant to the provisions of the Emergency Price Control Act of January 30, 1942, 56 Stat. at L. 23, as amended, and the Housing and Rent Act of June 30, 1947, 61 Stat. at L. 193.

Defendants' first objection is that plaintiff "fails to aver in concise and summary form all of the material terms of the oral lease in accordance with Pa. R. C. P. 1019(a)." We think the complaint substantially complies with the rule, and that the objection must be overruled.

The complaint avers that defendants are the owners in fee of a certain apartment house located at No. 2528 West Third Street, in the City of Chester, this county; that on or about February 10, 1947, plaintiff and defendants entered into an oral week-to-week lease agreement, the terms of which were that defendants were to lease and plaintiff to rent the apartment on the third floor of the said apartment house; and that in pursuance to the lease agreement, plaintiff moved into the said apartment and continued living there until August 29, 1947. Further averments are that defendants demanded and received and plaintiff paid to defendants rentals for the apartment in the sum of $15 per week for the period February 10, 1947, to July 7, 1947, and in the sum of $20 per week for the period July 7, 1947, to August 29, 1947; that during the period covered by the oral lease agreement, defendants' premises were situated in the Philadelphia defense rental area and subject to the regulations of the Emergency Price Control Act of 1942; and that the maximum rent for the apartment occupied by plaintiff, according to the registration certificate in the Office of Price Administration, was $20 per month, "and that the said

maximum rent applied during the period of time when plaintiff occupied the apartment."

Defendants do not contend that the facts are not stated in a "concise and summary form". They assert, rather, that the complaint does not state all of the "material facts." They say: "The type of utilities and other services offered by landlord to tenant, the absence or presence of a central heating unit, and the absence or presence of furniture and other similar provisions are clearly material to the case at bar in view of such registration." If these matters are material, we think it is defendants' duty to plead them, and to prove them if the case comes to trial. On its face, the complaint sets forth what would appear to be all of the material facts in a case of this character. We may not assume the existence of additional material facts. Nor may defendants, at this stage of the case, assert that there are additional material facts, and then move to strike off the complaint for failure to aver such facts. A motion to strike off or a demurrer can be employed only where there is a defect apparent on the record: City of York v. Miller, 254 Pa. 436. A statement can only be stricken off for some imperfections appearing on its face, and not for facts which must be elucidated by evidence: Standard Engineering and Lubricating Co. v. Hoenninger, 39 Lanc. 363.

"The rule that pleadings should state all facts pertinent and material is a rule of substance as well as of form, and as such is enforced as well by the Codes as by the common law; no lawyer should bring a suit until he has first determined in his own mind the essential facts upon which the case must turn": 3 Standard Pa. Practice 122.

In the absence of anything on the face of the complaint which would lead to a contrary conclusion, we must assume that the complaint contains a statement of all the material facts in the case. The requirements of a sufficient statement of claim have been stated on

numerous occasions, and we believe that what has been said in this behalf applies equally under the present Procedural Rules.

"The statement of claim must be self-sustaining. It must set forth facts sufficient to establish a legal cause of action, that is to say, it must set forth every ingredient necessary to a good and complete cause of action, by averring all facts or matters of substance essential thereto which, if not controverted, would entitle the plaintiff to a verdict for the amount of his claim": 3 Standard Pa. Practice, 123. The complaint before us meets this test.

Defendants cite the case of MacDowell v. Milbourn, 34 Del. Co. 109, in which this court, in an opinion by our present president judge, held insufficient plaintiff's declaration of ejectment. The case is not in point, as will be seen by a reading of the second paragraph of the opinion (p. 110):

"The first reason is that the declaration as filed refers to an oral lease but does not state sufficient particulars to permit the defendant to know its terms. The plaintiffs' declaration merely states that the defendant is in possession under a verbal lease from the plaintiffs as a tenant at will or by sufferance."

As the opinion points out, the statements in the declaration were nothing but conclusions of law. Furthermore, the legal conclusions were directly and mutually contradictory. It is impossible to imagine two things more mutually exclusive, each of the other, than a tenancy at will and a tenancy by sufferance. The fact is, as Coke says, "There is a great diversity between a tenant at will and a tenant at sufferance; . . ." in that one holds rightfully and the other wrongfully: Coke on Littleton 57 b.

The next ground of objection is that plaintiff fails to aver such facts as would support an action in assumpsit. Here, we think, defendants are on more solid ground. So far as our researches have disclosed,

the Supreme Court of the United States has not passed upon the precise nature of the recovery permitted under section 205(e) of the Emergency Price Control Act of 1942. In the recent case of Testa et al. v. Katt, 330 U. S. 386, 67 S. Ct. 810, that court found it unnecessary to decide the point. However, in Porter v. Warner Holding Co., 328 U. S. 395, 66 S. Ct. 1086, the court said (66 S. Ct. 1091):

"It (Section 205 (e) of the Act) establishes the sole means whereby individuals may assert their private right to damages and whereby the Administrator on behalf of the United States may seek damages in the nature of penalties."

In the decisions of the lower Federal courts and the State courts, there exists the greatest diversity of opinion as to whether section 205 (e) is penal in nature, or remedial. Probably the truth is that it is both. "We are to remember that the same provision may be penal as to the offender and remedial as to the sufferer. (citing cases)": Cardozo, J., in Cox v. Lykes Brothers, 237 N. Y. 376, 380, 143 N. E. 226, 227. It was so held in at least one State court: Geisinger v. Milner Hotels, Inc., 202 S. W. (2d) (Missouri) 142, 147.

Plaintiff's counsel brought the action in assumpsit, in reliance upon the decision in Pratt v. Hollenbeck, 46 D. & C. 657. It was there held that an action under section 205(e) of the Emergency Price Control Act of 1942, to recover treble damages, or $50, whichever is higher, for excessive rental payments "is not a penal action but a remedial one in the nature of an action on a quasi contract, so that it is properly brought in assumpsit and an affidavit of defense must be filed."

Quite inadvertently, of course, both learned counsel have overlooked the case of Byers v. Olander, 161 Pa. Superior Ct. 165, in which the court expressly rejected the reasoning of Pratt v. Hollenbeck, supra, and held that a justice of the peace does not have jurisdiction over an action in assumpsit brought under the Emer-

gency Price Control Act of 1942 against a landlord on account of an overcharge of rent. The court said (p. 168):

"In a sense the provision of the Act (Price Control Act) may be considered remedial, as appellant contends, but it does more than provide a remedy for a loss sustained; it imposes treble damages, or the equivalent, *as a penalty* on a landlord for collecting rent in excess of the allowable maximum."

We think there is no distinction in principle between the provisions of the Emergency Price Control Act and those of the Act of Congress of June 3, 1864, C. 106, §30, 13 Stat. at L. 108, giving to a person who has been charged usurious interest by a National bank, the right to recover back from the bank "twice the amount of the interest thus paid." In Lebanon National Bank v. Karmany, 98 Pa. 65, which was a suit under the National Bank Act, the court, in denying defendant the right of set-off, said (p. 76):

"In answer to the defendant's twenty-seventh point the court charged that there can be no set-off in this action. The plaintiff's claim is not within the Defalcation Act, which applies where the parties are 'indebted to each other upon bonds, bills, bargains, promises, accounts or the like'. It arises from the defendant's violation of a statute, *remedial and penal*, which gives the borrower the right to recover back from the bank twice the amount of illegal interest paid, *for the twofold purpose of compensation and example—the recovery being a recompense to the one and a punishment of the other*": (Italics supplied).

In Osborn v. First Nat. Bank, 154 Pa. 134, the court, speaking of a suit under the National Bank Act, said that "the sums sought to be recovered are penalties, pure and simple."

So, also, we think there is no material difference in principle between the recovery allowed under the Price Control Act and that allowed under our own Act of June 4, 1883, P. L. 72, which provides for damages

against a railroad company on account of discrimination in freight rates. In Sensenig v. Penna. R. R. Co., 229 Pa. 168, which arose under the latter act, the court said (p. 171) :

"The plaintiff declared under the Act of June 4, 1883, which makes the offending common carrier 'liable to the party injured for damages treble the amount of injury suffered;' and in his statement of claim, and on the several amendments, he claimed treble damages. *These damages awarded by the statute must be regarded as a penalty.* We see no room for a distinction in this respect, between the provisions of this act and those of the United States statute giving to a person who has been charged usurious interest by a national bank, the right to recover back from the bank 'twice the amount of the interest thus paid'. But an action to enforce that right has been expressly held to be 'for a statutory penalty' " citing Osborn v. First Nat. Bank, supra. (Italics supplied).

It is settled beyond peradventure that no affidavit of defense is required in a penal action: Commercial Nat. Bank v. Kirk, 222 Pa. 567; Nesbitt v. Clark et al., 272 Pa. 161; Bartoe v. Guckert et al., 158 Pa. 124; Com. ex rel. French v. Foley, 74 Pa. Superior Ct. 253.

In Osborn v. First Nat. Bank, supra (154 Pa. 134), the action was *assumpsit* to recover double the amount of usurious interest paid to the bank. (The Act of Congress prescribed an action of *debt*). On page 137, the court discusses the Act of 1887, which abolished the distinction between the different forms of action ex contractu, and directed that the action of assumpsit be brought in all cases of demands recoverable theretofore in debt, assumpsit or covenant. The opinion points out that the Act of 1887 did not abolish the distinction between actions ex contractu and actions ex delicto; and that debt for penalties is in its nature ex delicto, whereas all other debt is in its nature ex contractu. The opinion concludes (p. 138) :

"We hold that where the action is debt to recover a penalty, no affidavit of defence can be required in order to prevent judgment, for the double reason that the proceeding is substantially an action ex delicto, and that being an action to recover penalties the defendant cannot be required to furnish evidence against himself."

The Osborn case was cited in Philadelphia v. Cline, 158 Pa. Superior Ct. 179, which involved several actions to recover penalties for failure to file returns under the Earned Income Tax Ordinance of the City of Philadelphia. In the course of its opinion, the court said (p. 184):

"In a proceeding to recover a statutory fine or penalty the defendant may take advantage of his constitutional privilege to refuse to give evidence against himself even though such an action is not brought in a criminal court but is prosecuted through the modes of procedure applicable to the ordinary civil remedy" citing cases, including the Osborn case.

The briefs of counsel in the instant case show that they have not fully grasped the implications of defendants' second objection (relating to the form of action). We venture to suggest, therefore, that counsel study the case of Philadelphia v. Cline, and cases therein cited, as a valuable aid in the preparation of this case for trial.

In our opinion, this suit is for a penalty, and, therefore, is in its nature ex delicto. We see no necessity for a change in the form of action. However, defendants need not file an answer, and no judgment may be entered against them for failure to file one.

Defendants' third objection is that plaintiff does not comply with Pa. R. C. P. 1020, in that she alleges two causes of action without stating each in a separate count containing a demand for relief. The objection must be overruled.

As will be noticed more fully hereafter, part of plaintiff's claim arises under the Emergency Price Control

Act of 1942; the remainder of her claim arises under the Housing and Rent Act of 1947. Defendants insist that there are thus two distinct causes of action. We are not sure that we concur in this conclusion, but we will assume that defendants are correct in their assumption.

Defendants rely upon Pa. R. C. P. 1020 (*a*) :

"The plaintiff may state in the complaint two or more causes of action triable in the same county which arise from contract or are quasi-contractual. Each cause of action and any special damage related thereto shall be stated in a separate count containing a demand for relief".

Pa. R. C. P. 1041 provides: "Except as otherwise provided in this chapter, the procedure in the action of trespass shall be in accordance with the rules relating to the action of assumpsit."

Counsel do not appear to have noticed Pa. R. C. P. 1044, which provides:

"The plaintiff may state in his complaint two or more causes of action in trespass, triable in the same county, which arise from the same transaction or occurrence or series of transactions or occurrences".

There is nothing in the rule that requires each cause of action to be stated in a separate count. Notwithstanding the provisions of Pa. R. C. P. 1041, we do not believe that the procedure in actions of trespass was intended to follow that in actions of assumpsit, in this respect. In actions of trespass, plaintiff has a *limited* right to join claims in trespass he holds against the defendant, *restricted to claims arising out of the same factual background.* For obvious reasons, the rule requiring each cause of action and any special damage related thereto to be stated in a separate count containing a demand for relief, is not adaptable to several claims arising out of one transaction or occurrence or series of transactions or occurrences. If the Supreme Court had intended the rule in trespass actions to fol-

low that in actions of assumpsit, we think it would have so stated.

Defendants' fourth objection is that "the Federal Emergency Price Control Act of 1942 terminated as of June 30, 1947, leaving plaintiff no remedies thereunder for the collection of penalties for rent violation." Defendants' argument on this head of the case is a little difficult to follow. The Emergency Price Control Act of 1942, 50 U. S. C. App. §901 et seq., provided in section 1(b) thereof for its termination on June 30, 1945, or earlier in certain specified contingencies not necessary to notice at this time. Unhappily, the emergency giving rise to the necessity for price controls did not cease on June 30, 1945. Subsection (b) of section 1 of the act, amended by the Act of July 25, 1946, and the Act of June 30, 1945, which extended termination dates to June 30, 1947, and June 30, 1946, respectively, reads:

"The provisions of this Act and all regulations, orders, price schedules, and requirements thereunder, shall terminate on June 30, 1947, or upon the date of a proclamation by the President, or upon the date specified in a concurrent resolution by the two Houses of the Congress, declaring that the further continuance of the authority granted by this Act is not necessary in the interest of the national defense and security, whichever date is the earlier; *except that as to offenses committed, or rights or liabilities incurred, prior to such termination date, the provisions of this Act and such regulations, orders, price schedules, and requirements shall be treated as still remaining in force for the purpose of sustaining any proper suit, action, or prosecution with respect to any such right, liability, or offense.*" (Italics supplied).

The Housing and Rent Act of 1947, 50 U. S. C. App. §1881 et seq., became effective on July 1, 1947. Section 203(a) of that act, 50 U. S. C. App. §1893, provides: "After the effective date of this title, no maximum

rents shall be established or maintained under the authority of the Emergency Price Control Act of 1942, as amended, with respect to any housing accommodations." Concerning this provision, defendants ask, "What clearer language could be used than herein to indicate that all maximum rents as established under the OPA were completely erased?" Of course, they were. But that fact has no bearing on the efficacy of the savings clause in subsection (b) of section 1 of the Price Control Act.

Section 204(b) of the Housing and Rent Act of 1947, 50 U. S. C. App. §1894, provides:

"During the period beginning on the effective date of this title and ending on the date this title ceases to be in effect, no person shall demand, accept, or receive any rent for the use or occupancy of any controlled housing accommodations greater than the maximum rent established under the authority of the Emergency Price Control Act of 1942, as amended, and in effect with respect thereto on June 30, 1947 . . ."

Defendants contend that the two sections quoted from the Housing and Rent Act of 1947, evidence an intent of the Congress to terminate all rights to commence actions in the future for rent violations under the earlier act (Price Control Act). We find not the slightest shred of justification for such a conclusion. Other provisions of the 1947 act, in our opinion, indicate an intent of the Congress to the exact contrary. Section 207 of the later act, 50 U. S. C. App. §1897, provides:

"No action or proceeding, involving any alleged violation of Maximum Price Regulation Numbered 188, issued under the Emergency Price Control Act of 1942, as amended, shall be maintained in any court, or judgment thereon executed or otherwise proceeded on, if a court of competent jurisdiction has found, or by opinion has declared, that the person alleged to have committed such violation acted in good faith and that

application to such person of the 'actual delivery' provisions of such regulation would result or has resulted in extreme hardship."

Regulation No. 188 has nothing to do with rent control. By its silence with respect to actions or proceedings involving other violations of price regulations under the Emergency Price Control Act, Congress clearly revealed an intent not to exclude such other violations from the operation of the saving clause.

In Quirk v. United States, 161 F. (2d) 138, it was held that a prosecution for conspiracy to violate the Emergency Price Control Act was not barred because the indictment was returned after termination of the act, in view of the saving clause in the act. See, also, United States v. Gantt et al., 72 F. Supp. 205. It has been held on several occasions that liabilities incurred prior to the lifting of controls are not thereby washed out: Fleming v. Mohawk Wrecking & Lumber Co., 331 U. S. 111, 67 S. Ct. 1129; Bowles v. Goldman et al., 7 F. R. D. 12.

Section 205 of the Housing and Rent Act of 1947, 50 U. S. C. App. §1895, imposes liability for violations of the provisions of the act, such liability being for reasonable attorney's fees and costs as determined by the court, plus liquidated damages as therein set forth, but not necessary to recite here. The same section continues:

"For the purpose of determining the amount of liquidated damages to be awarded to the plaintiff *in an action brought under this section, all violations alleged in such action which were committed by the defendant with respect to the plaintiff prior to the bringing of action shall be deemed to constitute one violation,* and the amount demanded, accepted, or received in connection with such one violation shall be deemed to be the aggregate amount demanded, accepted, or received in connection with all violations." (Italics supplied.)

Defendants say: "Since article IX of the Constitution of the United States prohibits any 'ex post facto' law, no action could be brought under the Act of 1947 for violations alleged to have been committed previous to its effective date, viz.: July 1, 1947. The Congress has specifically required all prior violations to be combined into one action under this law."

Defendants misconceive the nature of this suit, and misconstrue the language of section 205 of the 1947 act. Plaintiff's suit is brought under the Emergency Price Control Act of 1942, as amended, for alleged violations of *that* act, i. e., for alleged violations during the period February 10, 1947, to June 30, 1947; and under the Housing and Rent Act of 1947 for alleged violations of *that* act, i. e., for alleged violations during the period July 1, 1947, to August 29, 1947. The Housing and Rent Act of 1947 is not "ex post facto" by any stretch of the imagination. As will be seen from a reading of the portion of section 205 which we have italicized, it is only "in an action brought under this section" that "all violations alleged *in such action* which were committed by the defendant with respect to the plaintiff prior to the bringing of action shall be deemed to constitute one violation." Suits for alleged violations of the Price Control Act are brought under *that* act; those for alleged violations of the Housing and Rent Act are brought under *that* act. There is nothing in the language of section 205 of the Housing and Rent Act of 1947 to indicate that violations of the Price Control Act are to be combined with violations of the later act to constitute "one violation."

We conclude, therefore, that that part of the instant action which is brought on account of alleged violations of the Emergency Price Control Act of 1942, is maintainable by reason of the savings clause in the act, and that nothing in the Housing and Rent Act of 1947 indicates an intention to terminate any rights of action under the earlier act. Defendants' fourth objection is accordingly overruled.

Lastly, defendants question the jurisdiction of this court in the premises. This objection, likewise, must be overruled.

Section 205 (e) of the Emergency Price Control Act provides that a buyer of a commodity above the prescribed ceiling price may bring an action against the seller on account of the overcharge "in any court of competent jurisdiction", and that "for the purposes of this section the payment or receipt of rent for defense-area housing accommodations shall be deemed the buying or selling of a commodity, as the case may be; and the word 'overcharge' shall mean the amount by which the consideration exceeds the applicable maximum price." Section 205 (c) provides that Federal district courts shall have jurisdiction of such proceedings "concurrently with State and Territorial courts": 50 U. S. C. App. §925.

Section 205 of the Housing and Rent Act of 1947 provides that any person who demands, accepts, or receives any payment of rent in excess of the maximum rent prescribed under section 204 of the act, shall be liable to the person from whom he demands, accepts, or receives such payment, for reasonable attorney's fees and costs as determined by the court, plus liquidated damages, as therein set forth; and that suit to recover such amount "may be brought in any Federal, State, or Territorial court of competent jurisdiction within one year after the date of such violation": 50 U. S. C. App. §1895.

In United States v. Schofield Co., 239 Pa. 582, which was an action in assumpsit on a bond given pursuant to act of Congress, the Supreme Court, in sustaining the jurisdiction in the case, said (p. 587) :

"It has long been determined, as held in Bletz v. Bank, 87 Pa. 87, that 'State Courts have concurrent jurisdiction in all cases arising under the laws of the United States where it is not expressly prohibited'. The Supreme Court of the United States has frequently up-

held the concurrent jurisdiction of the State Courts with those of the Federal Courts. In delivering the opinion in Claflin v. Houseman, 93 U. S. 130, 136, Mr. Justice Bradley, speaking for the court, says: 'Rights, whether legal or equitable, acquired under the laws of the United States, may be prosecuted in the United States Courts, or in the State Courts *competent to decide rights of the like character and class;* subject, however, to this qualification, that where a right arises under a law of the United States, congress may, if it sees fit, give to the Federal Courts exclusive jurisdiction' ". (Italics supplied).

It is unnecessary to discuss the question of the *duty* of a State court, when its ordinary jurisdiction, as prescribed by local laws, is appropriate to the occasion, and is invoked in conformity with those laws, to take cognizance of an action to enforce a right of recovery arising under an act of Congress, and susceptible of adjudication according to the prevailing rules of procedure. Those interested in the subject may read the opinion of the court in Testa et al. v. Katt, 330 U. S. 386, 67 S. Ct. 810, and cases cited therein.

The question, then, is whether this court is "competent to decide rights of the like character and class", with the right here asserted: United States v. Schofield Co., supra. Congress does not have the power, of course, to enlarge or regulate the jurisdiction of this court: Byers v. Olander, supra (161 Pa. Superior Ct. 165, 167).

That this court does have jurisdiction in the case, is too clear for argument, and appears from what already has been said. Buckwalter v. United States, 11 S. & R. 193, was the case of a *penalty* under an act of Congress, sued for in the name of the United States. The court said (p. 196):

"On the matter of jurisdiction, it is sufficient to observe, this court has often sustained actions on penal acts of congress, for the penalty, where the penalty is

made recoverable in the state courts. And although convenience is no justification for the usurpation of power, yet as the court does not see how this conflicts with the constitution of the *United States*, the inconvenience may be considered; and it would be an intolerable inconvenience and grievance, in an action for a petty penalty, to drag a man from the most remote corner of the state, to the seat of the federal judiciary."

Reference has been made already to those cases which hold that the sums which may be recovered from a National bank, under the act of Congress, for taking usurious interest, are penalties. The jurisdiction of the courts of this State in such an action was expressly upheld in Betz v. Columbia National Bank, 87 Pa. 87. Such suits have been frequent in our courts: Gruber v. First National Bank of Clarion, 87 Pa. 465; Stephens v. Monongahela National Bank, 88 Pa. 157; First Nat. Bank of Clarion v. Gruber, 91 Pa. 377; Lebanon National Bank v. Karmany, 98 Pa. 65; Osborn v. First Nat. Bank, 154 Pa. 134.

Too, reference has been made to suits against a common carrier to recover damages for discrimination under the Act of June 4, 1883, P. L. 72, in which such damages were held to be penalties: Sensenig v. Penna. R. R. Co., 229 Pa. 168; Hall v. Penna. R. R. Co., 257 Pa. 54.

It has been held in many cases arising under the Act of March 5, 1925, P. L. 23, 12 PS §672, that the question of jurisdiction over the subject-matter relates solely to the competency of the court to determine controversies of the general class to which the case presented for its consideration belongs: McCabe v. Ivory et al., 338 Pa. 572, 575, and cases there cited. Applying this test, there can be no question of our jurisdiction in this case.

Defendants refer us to the Act of June 16, 1836, P. L. 784, sec. 12, 17 PS §251, which provides:

"The Courts of Common Pleas shall have jurisdiction and power within their respective counties, to hear and determine all pleas, actions, and suits, and causes, civil, personal, real and mixed, according to the constitution and laws of this commonwealth; . . ."

This does not mean, as defendants seem to imply, that for every type or class of case of which the common pleas takes cognizance, there must be found a constitutional provision or act of legislature expressly conferring jurisdiction. The court of common pleas is a common-law court, and a court of general jurisdiction.

"The Common Pleas is our common-law Court, and has power in all matters of law not provided for by statute, in the State of Pennsylvania, so far as remedies in that Court have been developed, leaving to the equity side of it such matters for which the law remedies are insufficient. This makes that Court a Court of general jurisdiction with us. The remedies known in that Court are always to be invoked when the statute provides no other. Whenever there is a statutory remedy, that must be followed, and whenever a statute is made in derogation of common-law rights, such statute must be strictly construed": Appeal of W. H. Ainey et al., 2 Pennypacker, 192, 194.

Much of the oral argument in this matter centered about the decision in the recent case of Testa et al. v. Katt, 330 U. S. 386, 67 S. Ct. 810, where the Supreme Court of the United States reversed the action of the Rhode Island Supreme Court in holding that a suit for violation of section 205 (e) of the Price Control Act could not be maintained in the courts of that State. We shall not further extend an already lengthy opinion by a discussion of the case, other than to say that the Rhode Island courts admittedly had jurisdiction, adequate and appropriate under established local law, to adjudicate such an action. The case did not involve an attempt, by the exercise of Federal power, to enlarge or regulate

126

the jurisdiction of a State court, as a reading of the opinion will show.

### Order

And now, March 22, 1948, defendants' preliminary objections to plaintiff's complaint coming on to be heard by the court en banc, after due consideration thereof, the court doth order, adjudge and decree:

1. That defendants' preliminary objections be, and the same are, hereby overruled.

2. Defendants shall not be required to file an answer to plaintiff's complaint, and no judgment may be taken for their failure to file an answer.

3. Defendants are allowed an exception to the action of the court here taken.