PATRICK E. HIGGINBOTHAM, Circuit Judge,
dissenting:
This case centers on two questions. First, whether the EPA may require that Texas’s Flexible Permit Program be limited to Minor NSR by language sufficiently clear to close paths around Major NSR requirements. And whether the EPA’s conclusion that the Flexible Permit Program lacked that clarity was arbitrary or capricious. The majority does not dispute that the EPA could legitimately deny approval to Texas’s Flexible Permit Program if the program were not clearly drafted to limit its applicability to Minor NSR but disagrees with the EPA’s conclusion that the Flexible Permit Program lacks that clarity. Heeding the principle that the APA standard of “arbitrary and capricious” does not permit a court to vacate an agency decision based on its mere disagreement, I am persuaded that the EPA’s conclusion that the submitted Program is not clearly limited to Minor NSR, allowing for circumvention of Major NSR requirements, was neither arbitrary nor capricious. Rather, I see my brothers in error in assigning marks for “federal” writing, low by their own unstated measure, and not faithfully applying the deferential arbitrary and capricious standard.
I.
Under § 110(a) of the Clean Air Act, a State must adopt and submit to the EPA a *687 plan for implementing the national ambient air quality standards (“NAAQS”), known as a state implementation plan or “SIP.”[1] Each state implementation plan submitted by a State under the Clean Air Act must, among other requirements, “include enforceable emission limitations and other control measures, means, or techniques ... as may be necessary or appropriate to meet the applicable requirements of [the Clean Air Act].”[2] The EPA “shall not approve a revision of a plan if the revision would interfere with any applicable requirement concerning attainment and reasonable further progress (as defined in [42 U.S.C. § 7501]), or any other applicable requirement of [the Clean Air Act].”[3] The agency must approve the plan “as a whole if it meets all of the applicable requirements of [the Clean Air Act]” and a “plan revision shall not be treated as meeting the requirements of [the Clean Air Act] until the Administrator approves the entire plan revision as complying with the applicable requirements of [the Clean Air Act].”[4] The EPA’s own regulations provide that state implementation plans and their revisions must “be adopted as rules and regulations enforceable by the State agency.”[5]
The EPA’s task in evaluating a state implementation plan or a revision to a state implementation plan purportedly limited to Minor NSR is thus to assess the text of the “rules and regulations” adopted by the State and to determine whether those rules and regulations, by their own terms, serve the goals and satisfy the basic requirements set out in the Clean Air Act.[6] The majority does not directly dispute this point. Nor does it take issue with the EPA’s conclusion that the Clean Air Act requires EPA “review [to be] focused on the structure of the submitted Program.”[7]
“[T]he EPA’s authority under the [Clean Air Act] is limited to determining whether the proposed SIP revision ..., as written, complies with the Act.”[8] In explaining its conclusion that, as crafted, the Flexible Permit Program creates the potential for circumvention of Major NSR, the EPA cited several aspects of the submitted program. It found that the absence of any express provision clearly limiting the program’s use to Minor NSR or clearly prohibiting the program’s use to circumvent Major NSR requirements potentially exempted new major stationary sources and major modifications from the EPA’s Major NSR SIP requirements. It also noted that holders of Major NSR SIP permits are not prohibited from using the Program’s allowables-based emissions cap. The EPA explained that it reviewed the regulations as submitted to determine whether the Flexible Permit Program, as structured, is enforceable pursuant to § 110(a)(2)(A)-(C) of the Clean Air Act. *688 The Program establishes a cap in a Flexible Permit that is a summation of the BACT emission rates, but “[t]he submitted rules are not clear as to how the State does the summation.”[9] As the EPA noted, “[e]ven the State fail[ed] in its comment letter to clarify whether the cap includes the summation of not only the minor stationary sources and minor modifications but also the major stationary sources’ and major modifications’ emissions limitations.”[10] That “failure to clarify the methodology for the establishment of the cap contributes to the ambiguity” of the regulations.[11]
In addition, the EPA found that Texas’s definition of “account” allows an account that is covered by a Flexible Permit to include any combination of major and minor sources under common ownership or control and located in one or more contiguous properties.[12] This is contrary to Major NSR requirements, which only allow emissions increases to be offset by emissions decreases from a stationary source within the same industrial grouping. In response, the State asks the court to defer to “Texas’s reasonable interpretation” of the term “account” as not allowing for circumvention of Major NSR; notes that the EPA recognizes that Texas’s Major NSR rules limit emissions trading between stationary sources; and suggests that “the provisions of the ... Program are ... more than sufficient to enforce against any person who would intentionally or by wrongful presumption use the Program to circumvent major NSR.” The State’s response does not engage the EPA’s argument, which turns on how the terms of the Flexible Permit Program fail “to make clear that sources may not use the broad definition of ‘account’ to avoid Major NSR,” not on whether other TCEQ regulations provide for enforcement against people who would do so. Both the State and Industry Petitioners fail to counter the EPA’s analysis of how the definition of “account” within the Flexible Permit Program interferes with federal Major NSR regulations.
The State and Industry Petitioners have not demonstrated that the EPA’s conclusion that the submitted program opens a door to circumvention of Major NSR requirements was arbitrary or capricious. The State argues that at 30 Tex. Admin. Code § 116.711(8) — (9), the Program rules specify that a proffered change triggering Major NSR must comply with Texas’s Major NSR requirements. Yet those paragraphs are part of the rules regarding the “Flexible Permit Application” — not the rules for “Applicability” — and they merely state,
In order to be granted a flexible permit or flexible permit amendment, the owner or operator of the proposed facility shall submit information to [TCEQ] which demonstrates that all of the following are met:
(8) Nonattainment review. If the proposed facility, group of facilities, or account is located in a nonattainment area, each facility shall comply with all applicable requirements concerning nonattainment review in this chapter.
(9) Prevention of Significant Deterioration (PSD) review. If the proposed facility, group of facilities, or account is located in an attainment area, each facility shall comply with all applicable re *689 quirements in this chapter concerning PSD review.
Contrary to the State’s assertion, the EPA did not ignore that language in the regulations.[13] The EPA found that the language cited by the State is insufficient to establish that the Program applies only to Minor NSR because (1) the cited paragraphs only generally require compliance with all applicable requirements for non-attainment and PSD review within the Chapter rules;[14] (2) the cited paragraphs “do not contain any emission limitations, applicability statement, or regulatory provision restricting the construction or change to Minor NSR or clearly prohibiting circumvention of Major NSR”;[15] (3) there are no requirements or terms in the regulations that “expressly identify use of Flexible Permits as only a Minor NSR option”;[16] and (4) the regulations for Texas’s two other Minor NSR SIP alternative permit options do expressly limit applicability to Minor NSR.[17]
While, in the State’s words, EPA “did not complain about” the language of paragraphs (8) and (9) when used in regulations for other Texas Minor NSR programs, those other regulations contained express language limiting applicability of the programs to Minor NSR and precluding owners or operators from circumventing the Major NSR applicability determinations required by 30 Tex. Admin. Code § 116.110. Indeed, as the EPA noted in its final rule, the fact that Texas explicitly requires a Major NSR applicability determination in analogous programs elsewhere within the same regulatory scheme reinforces the porous ambiguity of the challenged regulations.
Nor does the EPA’s final rule demand that Texas write its, SIP regulations with a particular sentence structure or style. Rather, the EPA concluded that the submitted program, as written, is not clearly limited to Minor NSR. The EPA’s references to federal and state programs that pass muster illustrate the agency’s reasoning and provide examples that might guide the State, but a fair reading does not support the contention that those examples represent a demand that the State adopt verbatim the provisions of another state or federal program.
Finally, the State’s contention that the EPA has improperly disregarded Texas’s interpretation of its own rules and regulations is without merit. The EPA recognized that Texas intended the Flexible Permit Program to function as Minor NSR when the EPA disapproved the Program; Texas’s current understanding of the Program as applying only to Minor NSR does not establish that the language in the regulations is unambiguous. Indeed, during the comment period, TCEQ acknowledged that the submitted Program’s rules were not clear as to whether the Program could function as a Major NSR SIP revision.[18] Underlining this lack of clarity, the Electric Reliability Coordinating Council (ERCC) — an industry group — presumed in *690 its comments to the EPA that the Program applied to major modifications.[19]
I am confessedly uncertain as to the majority’s questioning of the EPA’s authority. To determine whether a SIP revision meets “all the applicable requirements” of the Clean Air Act,[20] the EPA must first determine whether or not the submitted program is limited to minor stationary sources and modifications.[21] The submitted SIP revision either does or does not clearly prohibit the circumvention of Major NSR. Agreeing with the State’s assessment of the Program, the majority suggests that this decision resides with Texas and not with the EPA. But, subject to the limitation of arbitrary and capricious review, the rejection of SIP revisions is well within the statutory power of the EPA. In finding that the Flexible Permit Program is “ambiguous regarding circumvention of Major NSR,”[22] the EPA has not “relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence,” or reached a conclusion “so implausible that it could not be ascribed to a difference in view or the product of agency expertise.”[23] And I find no error in the EPA’s analysis.
II.
The majority excoriates the EPA for taking sixteen years to disapprove the Flexible Permit Program. Such delay is plainly excessive and ill serves the public interest vested in orderly cooperative regulation. But in this failure of timely process the State was no innocent. Congress established a specific remedy for an EPA failure to take action on a SIP revision by the statutory deadline: a State or other party with standing may bring a mandatory duty suit in federal district court under 42 U.S.C. § 7604(a)(2). The State never filed such an action, and Industry Petitioners did not avail themselves of this remedy until 2008.[24] Regardless, EPA lethargy does not bear on the reasonableness of the EPA’s findings.
As the State’s focus on the EPA’s undue delay hints, its challenge to the EPA’s final rule might be better understood as an expression of principled indignation than as an attempt to defend and preserve the aspects of the Flexible Permit Program that the EPA disapproved. Indeed, at oral argument, counsel for the State struggled to articulate what was really at stake in this case. As TCEQ noted in its comments on the proposed rule, it has now revised the regulations at issue to clarify the Program’s limitation to Minor NSR, and it has stated that it will address the EPA’s concerns about the lack of MRR requirements in a forthcoming rulemaking and SIP revision. It seems everyone agrees that the Flexible Permit Program should not be used to circumvent the requirements of Major NSR. The practical effect of EPA’s decision is that the State *691 must submit revised regulations — for the most part already drafted and adopted by TCEQ — for EPA approval. The State understandably bristles at having to travel through the administrative bureaucracy once again, but indignation is not a ground on which we may vacate the EPA’s final action.
III.
The Clean Air Act does not state explicitly that a state implementation plan that is not clearly drafted to limit its application to Minor NSR must fulfill the requirements for Major NSR plans.[25] However, the EPA reasonably concluded that such a limitation is implicit in the statutory provisions regarding EPA review and approval of SIP revisions submitted by the states,[26] and contrary to the majority’s suggestion, the EPA’s determination that the Flexible Permit Program is not clearly limited to Minor NSR, allowing for circumvention of Major NSR requirements, was not arbitrary or capricious given the structure and language of the submitted regulations. Nor did the EPA act in excess of its statutory authority.
As so often with political debate in search of a legal forum, its utility lies largely in pleasure of expression. Angst over perceived federal intrusion into state affairs ought be eased by the reality that laws enacted by Congress are laws of the States. Congress passed the Clean Air Act and made it enforceable by the EPA. The State was represented in that decision by two senators and its thirty-two other elected members of Congress. It also bears mentioning that its former governor was resident in the White House for eight of the years in passage here. The Clean Air Act is not foreign law.[27] I dissent.

. 42 U.S.C. § 7410(a).

. Id. § 7410(a)(2)(A).

. Id. § 7410(1)-

. Id. § 7410(k)(3).

. 40 C.F.R. § 51.281.

. Id.

. Approval and Promulgation of Implementation Plans; Texas; Revisions to the New Source Review (NSR) State Implementation Plan (SIP); Flexible Permits,75 Fed.Reg. 41,-312, 41,322 (July 15, 2010) (to be codified at 40 C.F.R. pt. 52); see also id. at 41,325 (“Submitted rules that are clear as to who must comply, and explicit in their applicability to regulated sources are appropriate means for achieving the statutory enforcement requirement.”).

. Luminant Generation Co. LLC v. U.S. Envtl. Prot. Agency, 2012 WL 4841615, at *14 (5th Cir.2012) (emphasis added).

. Id. at 41,322.

. Id.

. Id.

. See id. at 41,327-28.

. See, e.g., id. at 41,319.

. Id.

. Id.

. Id.

. See id.; cf. Luminant Generation Co. LLC v. U.S. Envtl. Prot. Agency, 2012 WL 4841615, at *14 (5th Cir.2012) (noting that the "plain text” of another proposed Texas SIP revision “supports the EPA's reasoning that the provision, when applied, may not require a source owner or operator to establish all elements of [an] affirmative defense” for planned startup, shutdown, and maintenánce/malfunction activity (emphasis added)). ■

. Id. at 41,319.

. Id. at 41,319-20; see id. at 41,320 (“The commenter's comments are ... at odds with TCEQ's comments. TCEQ comments that its Program is intended to be a Minor NSR program only. In contrast, the commenter describes the submitted Program as covering major modifications and having a Flexible Permit (not a Major NSR SIP permit) altered to reflect the Major NSR review.'').

. 42 U.S.C. § 7410(k)(3).

. Compare id. § 7410(a)(2), with id. § 7502(c).

. 75 Fed.Reg. at 41,318.

. Motor Vehicle Mfrs. Ass’n v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43, 103 S.Ct. 2856, 77 L.Ed.2d 443 (1983).

. See BCCA Appeal Group v. EPA, No. 3:08-cv-01491-G (N.D. Tex. filed Aug. 25, 2008).

. See Chevron U.S.A. Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837, 843, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984) (explaining that where a statute is “silent,” courts must defer to the reasonable interpretation of the agency that administers the statute).

. See 42 U.S.C. § 7410(a), (k)(3),(Z); Chevron, 467 U.S. at 843, 104 S.Ct. 2778; 75 Fed.Reg. at 41,319-21.

.See Testa v. Katt, 330 U.S. 386, 391, 67 S.Ct. 810, 91 L.Ed. 967 (1947) (noting the Supreme Court's repudiation of "the assumption that federal laws can be considered by the states as though they were laws emanating from a foreign sovereign”).