Charles M. Hughes, J.
The Saratoga Harness Racing Association (hereinafter referred to as the petitioner) has moved pursuant to section 707 of the New York State Labor Relations Act (Labor Law, art. 20) (hereinafter referred to as the act) to vacate an order of the New York State Labor Relations Board (hereinafter referred to as the board) made pursuant to section 706 of the act. The board by cross motion has petitioned for the enforcement of the order.
A short resume of the proceedings will be helpful. The proceedings before the board were two in kind. The first was a representation proceeding under section 705 of the act for the purpose of determining whether or not petitioner’s employees desired to be represented by Sports Arena employees, Local 263, International Hod Carriers, Building and Common Laborers Union of America, A. F. of L. (hereinafter referred to as the union). This proceeding was brought by the petitioner and was designated as case No. CU-919 by the board. The second proceeding involved a charge of unfair labor practices against the petitioner. This case was designated as No. CEE-928. Both of these proceedings were consolidated.
The consolidated hearings before the trial examiner designated by the board were voluminous in nature. The trial examiner’s intermediate report was issued on March 18, 1955. The petitioner filed exceptions thereto on April 29, 1955, oral argument thereon was heard by the board on June 15 and 16, 1955, and on August 18, 1955, the board rendered its decision, findings of fact and conclusions of law. The board’s decision, with minor exceptions, affirmed that of the trial examiner. The matter was then noticed by the petitioner for a special term of this court on September 13, 1955, and was adjourned by consent and request of the parties from time to time until it was argued on February 21 and 22, 1956.
The board found after a review of the evidence that the petitioner had discharged one Norman McAllister and refused to employ, or continue to employ, a number of others, because of their union activities and affiliations; that the petitioner had refused to bargain collectively with the union; and that petitioner had interfered with, restrained and coerced its employees in the exercise of their rights under the act.
*442 The order of the board directed the petitioner to cease and desist from its unfair labor practices, to reinstate the discharged employee with back pay, to offer reinstatement to the employees whose employment petitioner had refused to continue, and to make them whole for any net losses and earnings they may have sustained; to bargain collectively in good faith with the union; and to post a copy of the board’s order together with a notice in a form therein specified.
The three basic issues presented to this court by the petitioner’s motion are briefly: (1) whether the board’s decision and orders are supported by substantial evidence; (2) whether the exclusion of certain testimony and an affidavit made by one McAllister materially prejudiced the petitioner’s defense or the presentation of its own case; and (3) whether the petitioner was denied due process of law.
A factual review of the entire proceeding which contains several thousands of pages would serve no purpose here.
The judicial review of the determinations of the New York State Labor Relations Board is limited by statutory provision. Subdivision 2 of section 707 of the act provides, in part, “ The findings of the board as to the facts, if supported by the evidence, shall be conclusive.” That there was conflicting evidence in the record was not unusual or unexpected. The function and duty of weighing such evidence was on the board. The mere fact that this court may have arrived at a different conclusion or that others may have differed with the findings of the board does not mean that there is no evidence in the record to support the board’s findings. The-board, by the same token, can reject evidence where it finds that such evidence could not be contradicted, or that the inherent probabilities furnish good reason for the rejection. A case with striking similarity is Matter of Stork Restaurant v. Boland (282 N. Y. 256). On the question as to whether a finding is supported by the evidence, a unanimous court stated (p. 274): “ There is often greater difficulty in applying the test than in formulating it. The evidence produced by one party must be considered in connection with the evidence produced by the other parties. Evidence which unexplained might be conclusive may lose all probative force when supplemented and explained by other testimony. The Board must consider and sift all the evidence — accepting the true and rejecting the false — and must base inferences on what it has accepted as true.”
An examination of the whole record reveals that the findings of fact are supported by the evidence. It would have been *443 improper for the board to consider isolated, piecemeal parts of the record that may have been favorable to one side or the other. Substantial evidence cannot be found in such a treatment as the petitioner wishes this court to undertake in reviewing the action of the board. The evidence has provided the board with a full picture of the situation.
The board was the trier of the fact and it had made its findings which cannot be disturbed without some reason that is more persuading than a difference of opinion as to what the findings could have been.
The court in Matter of Stork Restaurant v. Boland (supra) further stated (p. 267): “ Where there is conflict in the testimony produced before the Board, where reasonable men might differ as to whether the testimony of one witness should be accepted or the testimony of another witness be rejected, where from the evidence either of two conflicting inferences may be drawn, the duty of weighing the evidence and making the choice rests solely upon the Board. The courts may not weigh the evidence or reject the choice made by the Board where the evidence is conflicting and room for choice exists. (Cf. National Labor Relations Bd. v. Waterman S. S. Co., 309 U. S. 206, decided unanimously by United States Supreme Court, Feb. 12, 1940.) ” At page 274, the court went on to say: “ Choice lies with the Board and its finding is supported by the evidence and is conclusive where others might reasonably make the same choice. (Cf. Matter of Metropolitan Life Ins. Co. v. N. Y. State Labor Relations Board, 280 N. Y. 194.) ”
An examination of the record has revealed that the board’s findings of fact are based on substantial evidence and as such, they are conclusive upon this court. (Matter of Holland v. Edwards, 307 N. Y. 38; Matter of Jernigen v. New York State Labor Relations Bd., 300 N. Y. 482; Matter of Humphrey v. State Insurance Fund, 298 N. Y. 327; Matter of Kilgus v. Board of Estimate, 308 N. Y. 620.)
The petitioner’s second major contention is that it was materially prejudiced in the presentment of its case by the board’s refusal to accept in evidence an affidavit of Norman McAllister, one of the union organizers, which allegedly would have impeached his testimony. The board’s position is that this contention is without merit for the following reasons: The affidavit was inadmissible under rule 59 of the board’s rules and regulations; that there was no material inconsistency between McAllister’s testimony and his affidavit, and that the petitioner had laid no foundation for the introduction of the *444 affidavit for impeachment purposes. Subdivision 7 of section 702 of the act authorizes the board to promulgate its general rules and regulations. Rule 59 of the board’s rules and regulations (N. Y. Off. Comp. of Codes, Rules & Regulations [7th Supp.], p. 457) provides: “ No testimony or evidence shall be given or received at any hearing concerning transactions had or statements or communications made during the conduct or course of any informal conference called and held by the board, or any of its members or agents, concerning charges or petitions previously filed with the board, unless at the hearing all parties and Board’s attorney shall expressly waive this provision.”
There is no question from the record that the affidavit was used in the course of informal conferences of the board. The primary question is whether the petitioner was entitled to use the affidavit for purposes of impeachment.
The board, in affirming the trial examiner’s action as proper in excluding the affidavit under rule 59, stated the following (decision p. 6): “ The affidavit was offered by (Saratoga) to show an alleged inconsistency with McAllister’s testimony at the formal hearing. In his affidavit, McAllister stated that other employees previously had been discharged for attempting to form a Union. At the hearing, on cross-examination, McAllister admitted that he had heard that employees had been discharged for Union activities, but that he had no personal knowledge thereof. We find no basic inconsistency therein, and no prejudicial error in the inclusion of the affidavit, even if Rule 59 did not apply.”
The inconsistency was that McAllister had stated without personal knowledge the existence of a fact which may or may not have been true.
It would appear that the very purpose of rule 59 of the board’s rules and regulations was promulgated to completely air any grievances had of the parties without any prejudice to either party. A similar rule of law is applied to negotiations and offers of compromise in civil actions. It is not necessary to determine here whether that common-law rule has been written into rule 59 or whether rule 59 is more liberal in its application.
The material part of McAllister’s affidavit pertinent to this phase, reads as follows: “ The end of June (1953) I received a communication from an A. F. of L. official saying he can make arrangements for us to organize and asking a date to bring the organizers in. I told them I would let them know after consulting with the men. After talking with several it was *445 decided Friday, July 17th would be organization date. I suggested the word be given to the men very quietly, since many men had been previously fired for attempting to organize a Union.”
At the hearing before the trial examiner, McAllister testified on cross-examination that he had heard two men had been fired, and, further, that this was a false rumor. Though there was an inconsistency in his testimony and in the affidavit, this court does not feel that it was of such a material nature that the denial of the introduction of the affidavit materially prejudiced the petitioner’s case. It is the further opinion of this court that the affidavit fell within the purview of rule 59 of the rules and regulations of the board.
In the Matter of Natelson Bros. v. Labor Relations Bd. (194 Misc. 635) the court stated the following (p. 637): “As to rule 59 it is the court’s interpretation that when charges have been filed and a hearing is in progress upon such charges, no testimony shall be received concerning transactions, statements or communications which occurred at any informal conference unless all parties waive the benefit of such provision. Such testimony was therefore properly excluded in the absence of the consent of the respondent’s attorney.”
The above determinations on the question of material prejudice and the applicability of rule 59 renders the third question as to whether a proper foundation had been laid academic.
The third contention of the petitioners is that it was denied due process or equal protection of the law. The court has examined this contention and fails to find sufficient evidence in the record to make such a finding as a matter of law.
The petitioner has been afforded a full and complete hearing. It had ample time to submit briefs before the trial examiner, the board and also before this court.
The other questions raised by the petitioner have been examined fully, and it is the determination of the court that the board’s findings were supported by the evidence and the order was properly made. This justifies the enforcement of the order. (Matter of Stork Restaurant v. Boland, 282 N. Y. 256, supra; Matter of New York State Labor Relations Bd. v. Timen, 264 App. Div. 120.)
Application denied; cross application granted.
Submit order.