Ohables M. Hughes, J.
The petitioner, Sports Arena Employees, Local 263, International Hod Carriers, Building and *630 Common Laborers of America, A. F. of L., has moved for an order vacating respondent New York State Labor Relations Board (hereinafter referred to as the Board), March 29, 1960, “ Supplemental Decision and Order”, which dismissed the Board’s June 14, 1954 complaint that intervenor, Saratoga Harness Racing Association, Inc. (hereinafter called Saratoga) had engaged in certain unfair labor practices under the New York State Labor Relations Act (Labor Law, art. 20) at various times in 1953 and 1954.
On July 6,1956, this court upheld the decision of the Board of August 18, 1955 against the Saratoga Harness Racing Association, Inc. (Matter of Saratoga Harness Racing Assn. v. New York State Labor Relations Bd., 2 Misc 2d 440.) On appeal to the Appellate Division, Third Department, Saratoga, by order to show cause, after arguing the appeal on the merits, challenged the jurisdiction of the New York State Labor Relations Board on the ground that its operations affect interstate commerce. The Appellate Division remanded the proceeding to the Board to take evidence on and determine respondent’s newly raised challenge of State jurisdiction. The Appellate Division decision further stated that the court “ would affirm the order and determination and would not remit the proceeding except to afford petitioner [Saratoga] the opportunity to raise the additional question of Federal jurisdiction ”. (6 A D 2d 329, 333 [1958].) Thereafter the Court of Appeals affirmed the Appellate Division’s order (6 N Y 2d 960 [1959]).
The remanding order of the Appellate Division was based upon the United States Supreme Court decision in Guss v. Utah Labor Relations Bd. (353 U. S. 1). A majority of the United States Supreme Court held that State regulation of labor disputes affecting interstate commerce is barred, even though the National Board declined jurisdiction, unless the National Board has affirmatively entered into a cession agreement as provided in section 10 (a) of the National Act (U. S. Code, tit. 29, § 160, subd. [a]).
The net result of the findings of fact and conclusions of law that Saratoga was engaged in interstate commerce has placed the petitioner in the anomalous situation of having had a just grievance without any forum to remedy acts which violated both State and Federal law.
A review here of portions of the “ Supplemental Decision and Order ” of the Board will bear out this result. The Board correctly stated, as follows:
“ On November 13,1959, S. 14 (c) of the National Act, added by the federal Labor-Management Reporting and Disclosure Act *631 of 1959, became effective. That section provides, in substance, that the states and territories may assert and assume jurisdiction over labor disputes over which the National Board declines to assert jurisdiction. [TI. S. Code, tit. 29, § 164, subd. (c).]
“By this amendment, Congress eliminated the ‘no man’s land ’ created by the Supreme Court’s decision in the Guss case * * *
“ In the instant case, however * * * (Saratoga’s) unfair labor practices were committed prior to the effective date of S. 14 (c) of the National Act. As that section is not retroactive in application our jurisdiction to act herein must be determined on the basis of the law as it existed at the time of the unfair labor practices.
“ As appears from the Trial Examiner’s Supplemental Intermediate Report * * * (Saratoga), at the time of the unfair labor practices, and apart from other factors mentioned therein, purchased products originating outside the State of New York. These purchases were sufficiently substantial, under federal decisions, to bring * * * (Saratoga’s) operations within the reach of the National Board’s statutory jurisdiction. In view of the Supreme Court’s decision in Guss v. Utah, supra, and as S. 14(c) of the National Act is not retrospective in application, we are reluctantly constrained to hold, despite the manifest inequities involved, that this Board was without jurisdiction and the employees without any forum to remedy acts which violated both state and federal law. Accordingly, we must vacate and set aside the order heretofore issued herein, and shall dismiss the complaint for lack of jurisdiction.”
The primary issue before this court is whether the Board’s findings and conclusions that Saratoga business operations in 1953 and 1954 affected commerce within the contemplation of the National Labor Relations Act (U. S. Code, tit. 29, § 141 et seq.) was supported by substantial evidence.
The uncontroverted evidence in the record established that Saratoga’s operations in 1953 and 1954 affected interstate commerce within the meaning of the National Act. The evidence showed that Saratoga made purchases shipped directly to it from points outside New York State totaling $36,090.12 in 1953 and $28,413.93 in 1954. Indirect purchases totaled $28,409.51 in 1953 and $62,887.63 in 1954. Saratoga advertised nationally and 257 of 661 horses nominated or entered in races were owned by persons outside the State; and pari-mutuel machines and equipment were rented from a Maryland corporation at an annual rental in excess of $31,000. In each year in question, more than 10% of its patrons came from outside the State. An examina *632 tion of the record reveals that there was sufficient evidence to make the findings that Saratoga operations in 1953 and 1954 affected commerce within the contemplation of the National Labor Relations Act. In determining whether a particular employee’s business affects commerce within the National Act, the courts have repeatedly held that Congress, in enacting that act, intended to exercise the full extent of its power to regulate interstate commerce. (Guss v. Utah Labor Relations Bd., supra; National Labor Relations Bd. v. Denver Bldg. & Constr. Trades Council, 341 U. S. 675; Mabee v. White Plains Pub. Co., 327 U. S. 178; National Labor Relations Bd. v. Herald Pub. Co., 239 F. 2d 410.)
The petitioner’s contention that Saratoga’s pari-mutuel department is “an independent, autonomous and self-contained department ” and not within the purview of the National Act is without merit. The dissection of a business enterprise which is as highly integrated as a raceway would lead to confusion and weird results. In resolving the question of jurisdiction, the total operation must be given consideration. Here the operation of Saratoga took place at one geographical location. It was an integrated operation. The Board was correct in considering Saratoga’s operation collectively for jurisdictional purposes. (See National Labor Relations Bd. v. Jones & Laughlin Steel Corp., 301 U. S. 1; National Labor Relations Bd. v. Drummond, 210 F. 2d 828.)
The petitioner argues further that Saratoga “ is engaged in the conduct of a sport or amusement which has been adjudged to be not a business affecting interstate commerce, and which the National Labor Relations Board has consistently refused to accept jurisdiction.” The National Labor Relations Board has declined to exercise jurisdiction over raceways as a matter of policy and not on the basis of power. That it had authority to assert jurisdiction but declined to do so is set forth in a number of cases. (Pinkerton’s National Detective Agency, 114 N. L. R. B. 1363; Hialeah Race Course, 125 N. L. R. B. 57.)
The cases of Pappas v. American Guild (125 F. Supp. 343) and Federal Baseball Club v. National League (259 U. S. 200) decided that entertainment and sport are not per se commerce. The cases, however, did not involve raceways and are limited to the facts contained in those cases. Professional football and other sports have now become subject to Federal anti-trust laws. No citation of authority is needed to support this conclusion. The limited application of the Federal Baseball case is evident by the very fact that the United States Supreme Court has *633 refused to extend that case and Congress continues to acquiesce in the limited and restricted interpretation made hy the court.
The court here is mindful that in denying the petitioner’s application and finding that there was substantial evidence in the record to support the findings of fact and conclusions of law of the New York State Labor Relations Board, the petitioning union is without any forum to remedy acts which violated both State and Federal law. This, however, is not a matter for the courts to remedy. Congress had the matter before it when it passed the Federal Labor-Management Reporting and Disclosure Act of 1959. (73 U. S. Stat. 519 et seq.) The problem here is legislative and not judicial in nature.
This court, accordingly, denies the application of the petitioner for an order vacating respondent, New York State Labor Relations Board’s March 29, 1960, “ Supplemental Decision and Order.”
An order may be submitted accordingly on notice.