Argued March 8, affirmed December 29, 1961

# KEMPF *v.* CARPENTERS AND JOINERS LOCAL UNION

367 P. 2d 436

*Lewis K. Scott,* of Portland, argued the cause for appellant. With him on the briefs were Koerner, Young, McColloch & Dezendorf, Portland, W. F. Lubersky, Portland, Riddlesbarger & Pederson, Eugene, and L. D. Pederson, Eugene.

*Sidney I. Lezak,* of Portland, argued the cause for respondents. On the brief were Bailey, Lezak, Swink & Gates, Portland, and Paul T. Bailey, Portland.

Before McAllister, Chief Justice, and Rossman, Warner, Perry, Sloan, O'Connell and Goodwin, Justices.

McALLISTER, C. J.

This suit was brought by the plaintiff Donald B. Kempf, a building contractor, against Carpenters and Joiners Local Union No. 1273, other building trade unions, and the officers thereof, to enjoin alleged unlawful picketing by said unions, and for both compensatory and punitive damages. The trial court dismissed the suit for want of jurisdiction, and plaintiff has appealed.

The questions presented are whether a state court may assume jurisdiction over a labor dispute over which the National Labor Relations Board declines to assert its jurisdiction, and whether § 701(a) of the Labor-Management Reporting and Disclosure Act of 1959 (LMRDA), 29 USC § 164(c)[①] amending § 14 of the National Labor Relations Act (NLRA), 29 USC § 164, can be applied retroactively to this case.

The plaintiff filed his complaint on November 21, 1958, alleging therein that he was engaged in the home and general construction business in Lane county, and that on or about October 8, 1958, the defendant unions began picketing his building project and that the picketing continued to the filing of the complaint. Plaintiff alleged that the picketing was unlawful and had caused and would cause him irreparable damage, and that he had no plain, speedy or adequate remedy at law. He prayed for a decree enjoining defendants from picketing his construction project, and for both compensatory and punitive damages.

The case was first heard by the court below on the motion of the plaintiff for an injunction *pendente lite.* After hearing testimony the court found that the labor

---

[①] § 164(c) (1) The Board, in its discretion, may, by rule of decision or by published rules adopted pursuant to the Administrative Procedure Act, decline to assert jurisdiction over any labor dispute involving any class or category of employers, where, in the opinion of the Board, the effect of such labor dispute on commerce is not sufficiently substantial to warrant the exercise of its jurisdiction: *Provided,* That the Board shall not decline to assert jurisdiction over any labor dispute over which it would assert jurisdiction under the standards prevailing upon August 1, 1959.

(2) Nothing in this subchapter shall be deemed to prevent or bar any agency or the courts of any State or Territory (including the Commonwealth of Puerto Rico, Guam, and the Virgin Islands), from assuming and asserting jurisdiction over labor disputes over which the Board declines, pursuant to paragraph (1) of this subsection, to assert jurisdiction.

dispute affected interstate commerce, and on December 22, 1958 entered an order denying the motion for an injunction *pendente lite* on the ground that jurisdiction had been preempted by federal law.

There can be no doubt that under the law then in effect the holding of the trial court was proper. See *Garner v. Teamsters Union,* 346 US 485, 74 S Ct 161, 98 L ed 228; *Guss v. Utah Labor Board,* 353 US 1, 77 S Ct 598, 609, 1 L ed 2d 601; *Meat Cutters v. Fairlawn Meats,* 353 US 20, 77 S Ct 604, 1 L ed 2d 613; *San Diego Unions v. Garmon,* 353 US 26, 77 S Ct 607, 1 L ed 2d 618; and *San Diego Unions v. Garmon,* 359 US 236, 245, 79 S Ct 773, 3 L ed 2d 775. In the second Garmon case the court said:

"* * * When an activity is arguably subject to § 7 or § 8 of the Act, the States as well as the federal courts must defer to the exclusive competence of the National Labor Relations Board if the danger of state interference with national policy is to be averted."

This case at least arguably involves an alleged unfair labor practice affecting interstate commerce.

However, before this case was finally disposed of, Congress, on September 14, 1959, enacted the Labor-Management Reporting and Disclosure Act of 1959. Thereafter the lower court called for briefs as to the effect on this case of the amendments made by the LMRDA to § 14 of the National Labor Relations Act. The trial court thereafter rendered an opinion holding that the LMRDA did not affect the preemption of labor disputes affecting interstate commerce and dismissed the suit.

■ It seems to us obvious from the plain wording of § 14 of the NLRA as amended by § 701(a) of the

LMRDA that a state court may assume jurisdiction over a labor dispute over which the National Labor Relations Board has declined to assert jurisdiction. Plaintiff contends that the NLRB declined jurisdiction of this case because the monetary volume of plaintiff's interstate business is less than the jurisdictional minimum fixed by the NLRB for non-retail enterprises in Siemons Mailing Service, 122 NLRB 81, 85. Assuming that plaintiff's contention is correct, we think the narrower question determinative of this case is whether the 1959 amendments to section 14 of the NLRA can in any event be given retroactive effect so as to apply to this case.

■ It is a general rule that statutes will be construed to operate prospectively unless an intent to the contrary clearly appears. *Denny v. Bean,* 51 Or 180, 93 P 693, 94 P 503; *Spicer v. Benefit Ass'n of Ry Emp.,* 142 Or 574, 592, 17 P2d 1107, 21 P2d 187; *Lommasson v. School Dist. No. 1,* 201 Or 71, 100, 261 P2d 860, 267 P2d 1105; Sutherland, Statutory Construction (3d ed) § 2201, p 114; Crawford, The Construction of Statutes, § 277, p 562. The LMRDA contains no indication that Congress intended it to operate retroactively, and under the general rule the act would not apply to this case since all of the activity complained of occurred prior to the effective date of the act.

Plaintiff contends, however, that because this act operated only to permit the state court to assume jurisdiction over labor disputes over which the board declines to assert jurisdiction the act is remedial and should be given retroactive application. Plaintiff relies primarily on *Larkin v. Saffarans,* 15 Fed 147 (WD Tenn 1883), which was quoted with approval by this court in *Judkins v. Taffe,* 21 Or 89, 27 P 221. In the Larkin case it was held that an act of Congress

enlarging the jurisdiction of the federal circuit court applied to cases pending and undetermined when the act was passed.

If the only effect of the LMRDA was to authorize the state courts to assume jurisdiction of cases over which the NLRB had declined to exercise jurisdiction the reasoning of the Larkin case would be persuasive. However, there is more involved here than the assumption of jurisdiction by a state court over cases over which the NLRB has declined to exercise its jurisdiction. The LMRDA does not state what law the state courts may apply to the cases over which they assume jurisdiction. If the state courts were required to apply federal law the act would accomplish only a change of forum and could well be applied retroactively.

However, the legislative history of the LM RDA indicates that the state courts are not required to apply federal law. Determined efforts to amend the act to provide that the state courts could apply only federal law in these cases were rejected by Congress. The result is that the state courts are free to apply state law, although not required to do so. See Aaron, The Labor-Management Reporting and Disclosure Act of 1959, 73 Harv L Rev 1086, where the legislative history is reviewed in detail. See also Beeson, Boundaries of State-Federal Jurisdiction in Labor-Management Relations Under the New Labor-Law—A Federal View, 13 NYU Conf Lab 51, 60; Fairweather, An Evaluation of the Changes in Taft-Hartley, 54 NwU L Rev 711, 739-40; Fleming, Title VII: The Taft-Hartley Amendments, 54 NwU L Rev 666, 674; Goldberg and Meiklejohn, Title VII: Taft-Hartley Amendments, with Emphasis on the Legislative History, 54 NwU L Rev 747, 751-52; McCoid, Notes on a "G-String": A Study of the "No Man's Land" of Labor

Law, 44 Minn L Rev 205, 241-42; Smith, The Labor-Management Reporting and Disclosure Act of 1959, 46 Va L Rev 195, 234-35; Witney, LMRDA Title VII: Its Problems and Their Development, Symposium on the Labor-Management Reporting and Disclosure Act of 1959, 632-33 (Slovenko ed 1961).

■ We think the fact that a state court is at liberty to apply state law is a strong reason for holding that the act should not be applied retroactively. Unless retroactive construction is mandatory by the terms of the act it should not be applied if such construction will impair existing rights, create new obligations or impose additional duties with respect to past transactions. *Denny v. Bean,* supra.

There are, of course, marked differences between state and federal substantive law in the field of labor relations. These differences have been frequently mentioned by the Supreme Court in the cases which resulted in the extension of the doctrine of preemption to exclude completely the state courts from this field. See *Garner v. Teamsters Union,* supra; *United Workers v. Laburnum Corp.,* 347 US 656, 74 S Ct 833, 98 L ed 1025; *Weber v. Anheuser-Busch, Inc.,* 348 US 468, 75 S Ct 480, 99 L ed 546; *Machinists v. Gonzales,* 356 US 617, 78 S Ct 923, 2 L ed 2d 1018; *San Diego Unions v. Garmon,* 353 US 26, 77 S Ct 607, 1 L ed 2d 618; and *San Diego Unions v. Garmon,* 359 US 236, 79 S Ct 773, 3 L ed 2d 775. For additional comments on the differences between substantive state and federal law in the field of labor relations see: Delony, State Power to Regulate Labor-Management Relations, Symposium on the Labor-Management Reporting and Disclosure Act of 1959, 688 (Slovenko ed 1961); Rains, What the New Labor Law Means to Management, 10 Lab L J 753, 755-56.

To construe the LMRDA retroactively would be in effect to change the substantive law applying to the conduct of the parties, and probably, if not certainly, as to past activities create new obligations or impose additional duties or liabilities. Although the question has apparently not yet been decided by any court of last resort, the courts and administrative agencies which have considered the problem have declined to apply the LMRDA retroactively. *Derouen v. Lard,* 121 So 2d 311, 46 LRRM 2962 (La Ct App); *In re Sports Arena Employees, Local 263,* 25 Misc 2d 629, 207 NYS 2d 597; *Troy Springs Works, Inc.,* 46 LRRM 1083 (NY Labor Relations Bd); *Matter of Saratoga Harness Racing Ass'n,* 23 SLRB 63 (NY Labor Relations Bd). See *International Bhd of Elec Workers, Local 349 v. Shires,* 123 So 2d 259 (Fla Dist Ct App) (by implication).

We, therefore, hold that the LMRDA of 1959 is to be applied only to activities occurring after the effective date of the act.

The decree of the trial court is affirmed.

PERRY, J., concurring in part and dissenting in part.

I concur in the result reached by the majority for reasons which are set forth herein. I cannot agree, however, that the act effects a change in substantive law and should therefore be interpreted prospectively.

The act generally referred to as the Landrum-Griffin Bill, 29 USC § 164 (c) passed in 1959, reads as follows:

"(c) (1) The Board, in its discretion, may, by rule of decision or by published rules adopted pursuant to the Administrative Procedure Act [F.C.A. 5 §§ 1001-1011], decline to assert jurisdiction over any labor dispute involving any class or category

of employers, where, in the opinion of the Board, the effect of such labor dispute on commerce is not sufficiently substantial to warrant the exercise of its jurisdiction: Provided, That the Board shall not decline to assert jurisdiction over any labor dispute over which it would assert jurisdiction under the standards prevailing upon August 1, 1959.

"(2) Nothing in this Act [F.C.A. § 151 et seq. of this title] shall be deemed to prevent or bar any agency or the courts of any State or Territory (including the Commonwealth of Puerto Rico, Guam, and the Virgin Islands), from assuming and asserting jurisdiction over labor disputes over which the Board declines, pursuant to paragraph (1) of this subsection, to assert jurisdiction."

The trial court entered as a conclusion of law: "* * * this court is without jurisdiction to grant the relief requested as this field of litigation has been preempted by Federal law." The court therefore dismissed the plaintiff's cause of suit.

It is implicit in the above act that before a state court may assume jurisdiction of a labor dispute which has any impact upon interstate commerce the "Board" must have declined jurisdiction.

To establish the National Labor Relations Board's waiver of jurisdiction the plaintiff relies upon the Board's decision in *Siemons Mailing Service*, 122 NLRB 81, where the Board stated:

"* * * the Board has concluded that it will best effectuate the policies of the Act if jurisdiction is asserted over all nonretail enterprises which have an *outflow or inflow across State lines of at least $50,000, whether such outflow or inflow be regarded as direct or indirect.* For the purposes of applying this standard, *direct outflow* refers to goods shipped or services furnished by the employer outside the State. *Indirect outflow* refers

to sales of goods or services to users meeting any of the Board's jurisdictional standards except the indirect outflow or indirect inflow standard. *Direct inflow* refers to goods or services furnished directly to the employer from outside the State in which the employer is located. *Indirect inflow* refers to the purchase of goods or services which originated outside the employer's State but which he purchased from a seller within the State who received such goods or services from outside the State. In applying this standard, the Board will adhere to its past practice of adding direct and indirect outflow, or direct and indirect inflow. \* \* \*"

The plaintiff then contends that the evidence taken disclosed that plaintiff did not purchase products or services which originated outside the state of Oregon directly or through some supplier within the state exceeding $50,000.00 for the year 1958.

If the Siemons decision could be said to be a firm rule, so that the only question of waiver of jurisdiction rested upon the monetary amount of the impact the dispute has on interstate commerce and no question remained as to the labor board's refusal to consider this matter, I would agree. However, the Board, in rendering its opinion, also stated:

"Under the new standards, the Board will continue to apply the concept that it is the impact on commerce of the totality of an employer's operations that should determine whether or not the Board will assert jurisdiction over a particular employer. Accordingly, the Board will continue its past practice of totaling the commerce of all of an employer's plants or locations to determine whether the appropriate jurisdictional standard is met. Pursuant to this principle we shall adhere to our past practice of considering all members of multiemployer associations who participate in or are bound by multiemployer bargaining negotiations as single employers for jurisdictional purposes.

"The Board has determined that it will, as it did in 1954, apply the revised jurisdictional standards to all future and *pending* cases. This, of course, applies to pending unfair labor practice cases as well as to representation cases. With respect to complaint cases it is of course possible that complaints will issue based upon unfair labor practices occurring at a time when the operations of the particular employer involved, did not satisfy the then current 1954 jurisdictional standards. However, the Board does not believe that the mere fact that a respondent had reason to believe by virtue of the Board's announced jurisdictional policies that the Board would not assert jurisdiction over it, gave it any legal, moral, or equitable right to violate the provisions of the Act. This is especially true since the issuance of the *Guss* decision, which eliminated all possible basis for believing that in such circumstances the provisions of the Act did not apply, or that State law could or would apply to its conduct. In the final analysis what is conclusive with us is the fact that any other policy would benefit the party whose actions transgressed the provisions of the Act at the expense of the victim of such actions and of public policy. In pursuing this policy we shall not, however, reopen any complaint case in which the Board has dismissed a complaint on jurisdictional grounds."

The result of the Guss decision, *Guss v. Utah Labor Relations Board,* 353 US 1, 77 S Ct 598, 1 L ed 2d 601, was the determination that the failure of the National Labor Relations Board to assume jurisdiction of a labor dispute subject to Federal regulation did not leave the states free to regulate the dispute, though the dispute offended state law.

Subsequently in *San Diego Building Trades Council, etc. v. Garmon,* 359 US 236, 79 S Ct 773, 3 L ed 2d 775, the Supreme Court of the United States, in foreclosing any relief by the state courts in labor dis-

putes subject to the general act which affected in any manner interstate commerce, said:

"* * * When an activity is arguably subject to § 7 or § 8 of the Act, the States as well as the federal courts *must defer* to the exclusive competence of the National Labor Relations Board if the danger of state interference with national policy is to be averted." (Emphasis mine)

It is therefore clear that the National Labor Relations Board in the Siemons case, relied upon by plaintiff, did not have in mind a relinquishment of jurisdiction by the board or the board would not have retained the right to examine each individual case of claimed violation and to act accordingly.

The reason the Board retained jurisdiction is undoubtedly due to the fact that the Siemons case was decided before the enactment of 29 USC § 164(c), and the Board did not wish to deprive either labor or management of a forum in the event the Board felt the particular matter should be heard. But, whatever the reason of the Board, they have, so far as the showing is made in this case, not declined jurisdiction of this matter.

The result is the Board was merely stating that in its opinion dollar volume under $50,000 per annum did not create sufficient impact upon interstate commerce as to require it to accept jurisdiction in every case. *Haleston Drug Stores, Inc. v. N. L. R. B.*, 187 F2d 418; *Breeding Transfer Co.*, 110 N. L. R. B. 493.

That this is not a sufficient waiver of jurisdiction one need but to refer to the act of 1959 where we find that the state courts are granted jurisdiction only "over labor disputes over which the Board declines pursuant to paragraph 1."

Paragraph 1 states that the board "may decline" by decision or published rules. Thus, the words "may decline" clearly require the Board to act to waive its right of jurisdiction before the state courts may exercise theirs.

The act nowhere provides for concurrent exercise of jurisdiction. Jurisdiction of unfair labor practices involving interstate commerce lies either with the Board or the State. There can be no doubt of this legal conclusion since the Guss decision.

The Siemons decision shows at most the Board may not elect to act. But this is not the equivalent of declining to act.

I can reach no other conclusion than, until it appears that the Board has established a rule under which it can be at least said that the Board will not exercise its jurisdiction as to a class of disputes or the Board has actually declined in a particular matter to exercise its jurisdiction, the courts of the state are powerless to act.

There is no showing of a presentment to the Board and its rejection of this case. I therefore concur in the result. However, I must disagree with the majority opinion as to the act being prospective and not retrospective in operation.

The basis upon which the majority seek to base their opinion that the Congress intended the act to be prospective in operation seems to me untenable. If I understand their reasoning, it is that since the states may apply state law and thus apply state remedies in matters left to their jurisdiction, there is a change in the substantive law.

They do not point out and I am unable to discover any substantial difference in the remedy the NLRB might apply and have enforced in the federal courts

from that which the state could have applied in the case before us.

Also until the act is interpreted in the federal courts, or Congress acts, no one knows whether the state courts will be required to adhere to federal law or will be at liberty to apply the law of the jurisdiction.

In any event if we look to the general rules of interpretation there is no question in my mind but that the act is remedial in purpose and should be given retrospective interpretation.

The preemption of the entire field where interstate commerce was effected was of gradual growth based upon case by case decisions of the Supreme Court of the United States. Until the opinions in *Guss v. Utah Labor Board,* supra, and *San Diego Building Trades Council, etc. v. Garmon,* supra, it was thought that there were areas in which, though they might involve interstate commerce, the state courts and their labor agencies might act. See Aaron, The Labor-Management Reporting and Disclosure Act of 1959, 73 Harvard Law Review, 1086.

When the Supreme Court determined this field had been entirely preempted by Congressional action, it was apparent because of the inability of the labor board to carry the burden and its discretionary power to decline its aid in adjusting labor disputes, *Polish Nat. Alliance v. N. L. R. B.,* 322 US 643, 64 S Ct 1196, 88 L ed 1509; *Joliet Contractors Ass'n v. N. L. R. B.,* 193 F2d 833, cert. denied, 346 US 824, 74 S Ct 40, 98 L ed 349, that no forum existed whereby an aggrieved party to a labor dispute with any impact upon interstate commerce might be heard.

The Congress, then realizing there were numerous labor grievances which would have no forum in which

they could be heard, passed the act permitting the Board to waive jurisdiction that they might be adjusted in the state courts. See Daily Congressional Record.*

These statements of the members of Congress clearly disclose an intent to remedy a defect in this field of the law where interstate commerce was involved.

"Generally speaking remedial statutes are those which afford a remedy, *or improve or facilitate remedies already existing for the enforcement of rights and the redress of injuries,* * * *" 2 Sutherland Statutory Construction, 3d ed, ch 33, § 3301, p. 234. (Emphasis mine).

"* * * It is true that rules of statutory construction strongly favor a prospective interpretation of statutes which affect substantive rights, but when the new statute concerns itself merely with laws of procedure or remedies, the statute is generally applied to existing rights as well as to those which may accrue in the future. Denny v. Bean, 51 Or 180, (93 P. 693, 94 P. 503)." *Spicer v. Benefit Ass'n of Ry. Emp.,* 142 Or 574, 17 P2d 1107, 21 P2d 187. See also *M & M Woodworking Co. v. Tax Commission,* 217 Or 161, 314 P2d 272, 317 P2d 920, 339 P2d 718.

But this rule of interpretation, as I understand it, applies where the act effects the jurisdiction of a court established by the body enacting the statute.

The law is now well settled that Congress cannot confer jurisdiction upon any court which it has not established. *Bowles v. Barde Steel Co.,* 177 Or 421, 164 P2d 692, 162 ALR 328; *Walton v. Pryor,* 276 Ill 563, 115 NE 2, Cert denied, 245 US 675, 38 S Ct 8, 62 L ed 542; *Healy v. Ratta,* 292 US 263, 54 S Ct 700, 78 L ed 1248.

---

* 105 Daily Congressional Record, pp 3524, 5632, 5870.

State courts derive their jurisdiction from the constitution and laws of the state and their jurisdiction cannot flow from any other source. *Dippold v. Cathlamet Timber Co.*, 98 Or 183, 193 P 909.

Since the constitutional laws of the United States are the supreme law of the land, the Congress may only restrict the powers of the state and it is in this manner that they limit the jurisdiction of its courts. *Healy v. Ratta*, supra.

1 Sutherland, Stat Const, 3d ed, § 2027, says:

> "Where a state statute is declared unconstitutional or invalid because it is in conflict with federal legislation, the state statute is in effect merely unenforcible or suspended by the existence of the federal legislation."

There is no question but that had the labor dispute not had impact upon interstate commerce the courts of this state would have had jurisdiction of the parties and the subject matter and the right to proceed to a full and final determination of the issues. *Markham & Callow, Inc. v. International Woodworkers, etc.*, 170 Or 517, 135 P2d 727.

Nothing I have stated relative to the source of jurisdiction is in conflict with decisions of the Supreme Court which hold that state courts of competent jurisdiction, when their jurisdiction may be invoked, must enforce the laws of the United States. See *Testa et al. v. Katt*, 330 US 386, 67 S Ct 810, 91 L ed 967, 172 ALR 225. *Testa et al. v. Katt*, and kindred cases, deal not with the source of jurisdiction but with the power to require exercise of jurisdiction.

This distinction is clearly set forth by Mr. Justice BRAND in *Bowles v. Barde Steel Co.*, supra, at page 470:

> "The cases cited demonstrate that the jurisdic-

tion of state courts is not based on any delegation of federal judicial power. On the contrary, in enforcing federal statutes, the state courts exercise the judicial power of the state. In State ex rel. v. Olson, supra, this Court said: 'Jurisdiction is *conferred* upon state courts.' Perhaps the word 'conferred' is inapt. We might better have said jurisdiction is authorized, and, being authorized, should be exercised."

It therefore clearly appears that the state courts had jurisdiction of the matter but that its power to proceed when it discovered that interstate commerce was involved was suspended.

The question therefore is not whether the state courts had jurisdiction of this dispute but when the federal restriction of its jurisdiction was lifted to permit the exercise of its power. The answer to this question in my opinion is found in determining whether Congress by the passage of this amendment intended to permit the NLRB by rules and regulations to waive its jurisdiction as to matters which could have been pending before it.

A reading of the act itself convinces me that Congress clearly expressed its intention that the act was to apply to all matters over which the board might exercise its jurisdiction with a single exception. This exception is found in the last sentence of C-1 which reads as follows:

"* * * that the board shall not *decline* to exercise jurisdiction over any labor dispute of which it would have exercised jurisdiction under the standards prevailing upon August 1, 1959." (Emphasis mine)

This language could only be interpreted as requiring the Board to accept jurisdiction of cases which

were then pending and on which the Board would have acted under its rules and regulations prevailing on August 1, 1959.

I cannot believe that Congress intended to limit the power of the Board to make new rules and regulations within its discretionary power in the future.

It therefore seems clear to me that the Board was free to act as to all matters then pending or which might have been pending which were below the standard of its rules and regulations as they existed on August 1, 1959.

In any event, since Congress does not endow state courts with jurisdiction but merely lifts the limitation upon their proceeding in a matter which was in conflict with the Federal legislation, it seems clear to me that a case pending in a state court which has jurisdiction of the parties and the subject matter but may not proceed when it appears its powers are limited by Federal law, regains its power to proceed when the bar is lifted.

There is no question but that the bar was lifted with the passage of the Landrum-Griffin Act.

Where a court's jurisdiction or its extent depends upon the facts of a particular case, jurisdiction is determined at the time the facts are shown, challenged and decided. *Larkin v. Saffarans,* 15 F 147; *Judkins v. Taffe,* 21 Or 89, 27 P 221; *Federal Reserve Bank of Richmond v. Kalin,* 77 F2d 50; *Bascom v. District Court,* 231 Iowa 360.

The jurisdiction of the state court in the matter before us was not decided until after the passage of the Landrum-Griffin Act.

That enlarging the jurisdiction of a court relates only to practice and procedure is well established by

the above cited cases and, as stated in *Federal Reserve Bank of Richmond v. Kalin,* supra, " 'apply to pending actions and those subsequently instituted, although the cause of action may have arisen before.' *Link v. Receivers of Seaboard Air Line Ry. Co.* (C.C.A. 4th) 73 F. (2d) 149, 151; *Hallowell v. Commons,* 239 U. S. 506, 36 S. Ct. 202, 60 L. Ed. 409; *Baltimore & P. R. Co. v. Grant,* 98 U. S. 398, 25 L. Ed. 231."

For the above reasons I concur in the result but I must dissent from the majority's finding that the act had only prospective application.

Mr. Justice ROSSMAN concurs in this opinion.