# LIVINGSTON v. STATE TAX COMMISSION

Frank H. Spears, Portland, and Koerner, Young, McColloch & Dezendorf, Portland, submitted briefs for plaintiffs.

Walter J. Apley, Assistant Attorney General, Salem, and Robert Y. Thornton, Attorney General, Salem, submitted a brief for defendant.

Decision for plaintiffs rendered January 31, 1964.

PETER M. GUNNAR, Judge.

This is a suit to set aside State Tax Commission Opinion and Order No. I-63-26, which disallowed the special treatment of capital gains claimed by plaintiffs on their 1960 joint personal income tax return. A decision on the issues raised by defendant's general demurrer, now before the court, will dispose of the case.

On December 30, 1959, plaintiff Gale Livingston, a cash-basis, calendar-year taxpayer, sold 50 shares of the capital stock of AsthmaNefrin Company, Inc., an Oregon corporation, under a written agreement dated December 24, 1959. The sales price was to be paid in installments over a period of six years. On their 1959 joint personal income tax return, plaintiffs validly elected to report the gain on the sale of the stock on the installment basis pursuant to ORS 316.190.

During 1960, plaintiff reinvested $62,595 of the installment payments received in 1960 in the capital stock of Paper Mills Agency of Oregon, Inc., an Oregon corporation which qualifies for capital reinvestment under ORS 316.426. In their joint income tax return for 1960, plaintiffs treated as a capital gain under ORS 316.406 to 316.450 that part of the gain realized on the 1960 installment payments which was reinvested in Oregon.

Defendant disallowed plaintiffs' claim of special capital gains treatment for the year 1960 on the ground that, since the special capital gains treatment was to apply only to "tax years beginning after December 31, 1959," the special capital gains treat-

ment was inapplicable to this 1959 sale, even though the taxpayers were reporting their gain on the installment basis and the gains on the installments being taxed were received and reinvested in a qualifying investment in 1960.

The demurrer raises the issue of whether the law at the time of the consumation of the sale determines the applicability of the capital gains provisions, or whether the law prevailing in each subsequent year in which an installment is received is determinative of the tax treatment of that installment. Neither counsel nor the court has been able to find any Oregon case which is applicable to the facts of this case.

■ In the federal courts the rule is now settled that the law in effect during the year of an installment's receipt determines the application of capital gain provisions to the realized gain included in that particular installment payment. *Snell v. Com.*, 95 F2d 891, 38-2 USTC § 9417 (CCA 5 1938) and see also, *Harry B. Golden*, 47 BTA 94 (1942) and *J. C. Manternach*, BTA Memo Op., Dkt. 108096 (Sept. 23, 1942).

In the *Snell* case, *supra,* the taxpayer made an installment sale of real estate held primarily for sale to customers in the ordinary course of his business. In the year of the sale the gain from such sale was taxable at capital gains rates. Subsequently, the law was changed so that gains on sales of property held primarily for sale to customers were taxable at ordinary income rates. The taxpayer argued that the law in effect at the time of the sale was determinative with regard to the taxation of the gain to be recognized on each of the subsequent installments. But the United States Court of Appeals for the Fifth Circuit upheld the government's contention that the law in

effect at the time the installment is received is determinative, and in so doing stated:

> "As to the instalment sales made in 1923, the taxpayer might have elected to take his whole profit then and have had it taxed under the Revenue Act of 1921. He chose to defer realization of the profits on the deferred instalments. These thereby were left to fall under such provisions of the law as might be of force at their maturity. *That the law might be changed, not only in the tax rate but in any other of its provisions, was a risk the taxpayer took in deferring the realization of his gains.* The Board [now the United States Tax Court] rightly applied to them the law as it stood when the gains became taxable." (Emphasis supplied)

In the *Golden* and *Manternach* cases, *supra,* the Board of Tax Appeals held that the capital gains rates in effect at the time of the collection of the installment, and not those rates in effect at the time of the installment sale, controlled the tax due for the tax year in which the installment obligation was satisfied. These cases support a holding that the law in effect at the time of receipt is applicable.

The State Tax Commission has presented us with no substantial reason to discard the federal rule. It claims that to allow the taxpayer the use of the capital gains treatment in this situation would result in a windfall to taxpayers who used the installment basis on pre-1960 sales. The word "windfall" in this context appears to mean anything that is left to a taxpayer after the tax collector is finished with him. See dissent of Mr. Justice Jackson in *Arrowsmith v. Commissioner,* 344 US 6, 11, 97 L ed 6, 11 (1952).

■ The State Tax Commission alludes to the theory that at the time of the sale in 1959, the sale could

not have been that of a capital asset because there was no such thing as a capital asset at that time, and therefore no capital gain could arise under ORS 316.410(1) which defines capital gain to mean the gain from the sale or exchange of capital assets. An argument of this type must fail under the authority of the *Snell* decision, *supra*. That decision holds that the asset sold must be categorized at the time the installment is received and that the categorization must be made under the law in effect at receipt. The sale in *Snell* occurred while the Revenue Act of 1921 was operative. Section 206(a)(6) of that act included in capital assets "property acquired and held by the taxpayer for profit or for investment for more than two years, (whether or not connected with his trade or business) but not * * * stock in trade of the taxpayer or other property of a kind which would properly be included in the inventory of the taxpayer if on hand at the close of the taxable year." The installments were received while the Revenue Acts of 1924 and 1926 operated. They added to the express words of exclusion "or property held by the taxpayer primarily for sale in the course of his trade or business." Therefore, in *Snell* the court used language which was not in the taxing statute at the time of a sale to categorize the sale as giving rise to ordinary income upon the receipt of the installment. The *Snell* decision forces us to look at the language in the statute at the time of the receipt of the installment and since the statute noted the existence of a category of asset at that time which category could be denominated "capital," then the sale could have been of a capital asset.

Furthermore, ORS 316.442 speaks of the existence of capital assets "after December 31, 1958" and there-

fore the statute contemplates the existence of a capital asset during the calendar year 1959, which was the year in which the sale in this case occurred.

■ The commission also argues that any attempt to apply the capital gains provisions to gains recognized on the collection of the installment obligation in 1960 would be a retroactive application of the capital gains provisions and therefore violate the general rule of statutory construction that statutes should be construed to operate prospectively unless a contrary intent clearly appears. *Kempf v. Carpenters and Joiners Union,* 220 Or 337, 367 P2d 436 (1961); Sutherland, *Statutory Construction,* § 2201 (3rd ed, 1942). This interpretation is without merit. ORS 316.406 provides that "ORS 316.408 to 316.450 [the capital gains provisions] apply to tax years beginning after December 31, 1959." The tax year in question is one which begins after December 31, 1959. By the plain meaning of the statute the capital gains provisions apply to that tax year. The gains in question were recognized in that tax year and, therefore, *a fortiori,* the capital gains provisions should apply to those gains.

■ It is the policy of this state to conform the administration of our income tax laws to the administration of the federal laws whenever it can be done without infringing upon the sovereignty of the state in this field. *Ruth Realty Co. v. Tax Commission,* 222 Or 290, 294, 353 P2d 524 (1960); *Schmitt v. Commission,* 1 OTR 25, 27 (1962), aff'd 234 Or 445 (1963). The rationale of the federal rule is clear: a taxpayer should only have to use the law which applies to the year in which the gain is recognized in order to compute how much tax he owes. Any other rule would force a taxpayer to search prior law every time an

installment was paid in a later year and would cause part of his income to be returned under prior law and another portion under current law, a situation which would make compliance with, and administration of, the tax laws extremely more burdensome than they have a right to be. The adoption of a rule in this case conforming with the federal law in similar cases is appropriate and logical and does not impinge on the sovereignty of Oregon in income tax law.

Plaintiffs shall prepare and present an order denying defendant's demurrer in accordance with this decision and allowing defendant 20 days in which to plead further. If defendant shall not plead further within 20 days, plaintiffs may have their decree herein under Rule 32.