[Civ. No. 10837. Third Dist. July 14, 1964.]

CHAUFFEURS, TEAMSTERS AND HELPERS LOCAL NO. 150, INTERNATIONAL BROTHERHOOD OF TEAMSTERS, CHAUFFEURS, WAREHOUSEMEN AND HELPERS OF AMERICA, Petitioner, v. THE SUPERIOR COURT OF SACRAMENTO COUNTY, Respondent; JACK W. SELLERS et al., Real Parties in Interest.

LeProhn & LeProhn and Stewart Weinberg for Petitioner.

No appearance for Respondent.

Edwin H. Franzen and Hill, Farrer & Burrill for Real Parties in Interest.

SCHOTTKY, J.—In this proceeding for a writ of prohibition we are concerned with the question whether, after the National Labor Relations Board has tentatively assumed jurisdiction over union organization efforts, a state court may enjoin a libel which is connected with a union's attempt to organize a plant.

Chauffeurs, Teamsters and Helpers Local No. 150, International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America (the local) began a campaign to organize the employees of the real parties in interest, who may collectively be referred to as "Coca Cola."

In the Spring of 1963 the local filed a petition with the National Labor Relations Board for the purpose of being certified as the collective bargaining representative of Coca Cola's employees.

In June the National Labor Relations Board (NLRB) issued a complaint against Coca Cola in which it was charged that Coca Cola had committed unfair labor practices within the meaning of the National Labor Relations Act. (29 U.S.C.A. § 151 et seq.) The complaint alleged Coca Cola interfered with the exercise by the employees of their rights as guaranteed by section 7 of the act. (61 Stat. 140, 29 U.S.C.A. § 157.) This matter was heard in August 1963. Shortly after the hearing the local commenced publicizing the proceedings and the testimony at the hearing on the charges. The publicity took the form of a handbill which was distributed to the public in front of supermarkets which sold Coca Cola and at the California State Fair Grounds. This document, which formed the basis of the libel action, read as follows:

"DON'T BUY COCA COLA

"PROTEST LIE DETECTOR TESTS AND DISCRIMINATORY DISCHARGES

"DEAR CONSUMER:

"These startling facts were brought out at a government hearing on charges filed against Coca Cola Bottling Company of Sacramento:

"Coca Cola refuses to recognize the long established right of laboring people to freely organize and choose collective bargaining representatives.

"Coca Cola created a puppet union for its employees and runs and uses this union for its own purposes. Spies are used to insure that these purposes are carried out. Employees failing to go along are discharged.

*"So far this year Coca Cola has fired two employees because they refused to accept the puppet company union and wanted a real union.*

"Even worse, new employees are given LIE DETECTOR TESTS to determine their union sympathies and membership; and Coke does not stop here. LIE DETECTOR TESTS are given regular employees. They are questioned about intimate details of their private lives to further embarrass and humiliate them. No rank and file employee at Coke is safe from the LIE DETECTOR.

"It is not a crime to be pro-union; Coca Cola must think so. It treats its employees as criminals. Help convince the Coca Cola Company that you and other modern consumers do not believe in these totalitarian practices.

"PLEASE DON'T BUY COCA COLA!

"Thank you.

"TEAMSTERS, LOCAL 150"

Within a few days, on August 28, 1963, Coca Cola commenced an action in the superior court for libel based on statements appearing in the handbill. On the same day the court issued a temporary restraining order enjoining the local from distributing the handbill. Thereafter, the superior court issued a preliminary injunction preventing the local "From printing, publishing, circulating and distributing, or causing to be printed, published, circulated or distributed either alone or with other literature or by handing to individuals or by any other means, false and untruthful statements identical to or whose substance is the same as or similar to" those in the handbill set forth above.

In October 1963 Coca Cola sought and NLRB issued a complaint charging the local with unfair labor practices under "section 8(b), subsection (4) (ii) (B)" of the act, in that it coerced certain persons to cease selling Coca Cola. Coca Cola studiously excluded any reference to the defamatory item which it had already laid before the state court. Coca Cola itself sought to create a division of authority between state and federal tribunals covering separate manifestations of a single labor dispute.

On November 15, 1963, the United States District Court issued a temporary injunction restraining certain picketing, including any attempt to advertise to the public at the site of certain supermarkets the local's dispute with Coca Cola. (We, of course, are not concerned with the scope of the in-

junction issued by the federal court. Its breadth though may be too wide.) (See *National Labor Relations Board* v. *Fruit & Vegetable Packers*, 377 U.S. 58 [84 S.Ct. 1063, 12 L.Ed.2d 129]; *National Labor Relations Board* v. *Servette, Inc.*, 377 U.S. 46 [84 S.Ct. 1098, 12 L.Ed.2d 121].)

The local filed a demurrer to the libel complaint in the state court. It argued that the subject matter of the complaint was in excess of the jurisdiction of the court because the conduct of the local in publishing and distributing the handbill was an activity arguably within the purview of section 7 or 8 of the National Labor Relations Act.

The question with which we are concerned is whether a state court may enjoin the publication of a libel which arises out of and is connected with a union's attempt to organize and win an NLRB election to represent a company's employees.

In answering this question we may start with the second opinion of the United States Supreme Court in the case of *San Diego Bldg. Trades Council* v. *Garmon*, 359 U.S. 236 [79 S.Ct. 773, 3 L.Ed.2d 775]. This requires some discussion. The case began in 1953 when the Garmons, who owned a lumber yard, filed a suit against a local construction union seeking an injunction to prevent picketing and for damages. The activity was arguably an unfair labor practice under the National Labor Relations Act. The union argued unsuccessfully at the trial that it had not committed an unfair labor practice under California law and that the court had no authority to apply federal law. The California Supreme Court (*Garmon* v. *San Diego Bldg. Trades Council*, 45 Cal.2d 657 [291 P.2d 1]) held in effect that since the acts of the union were an unfair labor practice under the National Labor Relations Act, the activities were not privileged under California law and upheld the decision of the trial court awarding damages and issuing an injunction. The United States Supreme Court in *San Diego Bldg. Trades Council* v. *Garmon*, 353 U.S. 26 [77 S.Ct. 607, 609, 1 L.Ed.2d 618], held that the California courts were incompetent to issue the injunction. The injunction was set aside and the case was remanded on the question whether California law permitted the award of damages on the facts. The California Supreme Court then held (*Garmon* v. *San Diego Bldg. Trades Council*, 49 Cal.2d 595, 602 [320 P.2d 473]) that the picketing was tortious under California law and sustained the damage

award. Again, the California decision was overturned. The United States Supreme Court (359 U.S. 236 [79 S.Ct. 773, 3 L.Ed.2d 775]) ruled directly on the question of federal preemption and quoted with approval at pages 242, 243 of 359 U.S. [79 S.Ct. 773, 3 L.Ed.2d 775, at pp. 781, 782], the following language from *Garner* v. *Teamsters C. & H. Local Union,* 346 U.S. 485, 490, 491 [74 S.Ct. 161, 98 L.Ed. 228, 239], which discussed the preemption question under the National Labor Relations Act: " 'Congress did not merely lay down a substantive rule of law to be enforced by any tribunal competent to apply law generally to the parties. It went on to confide primary interpretation and application of its rules to a specific and specially constituted tribunal [NLRB] and prescribed a particular procedure for investigation, complaint and notice, and hearing and decision, including judicial relief pending a final administrative order. Congress evidently considered that centralized administration of specially designed procedures was necessary to obtain uniform application of its substantive rules and to avoid these diversities and conflicts likely to result from a variety of local procedures and attitudes towards labor controversies. . . . A multiplicity of tribunals and a diversity of procedures are quite as apt to produce incompatible or conflicting adjudications as are different rules of substantive law. . . .' "

The court then said in *Garmon* at pages 244, 245 of 359 U.S. [79 S.Ct. 773, 3 L.Ed.2d 775 at pp. 782, 783] : "When it is clear or may fairly be assumed that the activities which a State purports to regulate are protected by section 7 of the National Labor Relations Act, or constitute an unfair labor practice under section 8, due regard for the federal enactment requires that state jurisdiction must yield. To leave the States free to regulate conduct so plainly within the central aim of federal regulation involves too great a danger of conflict between power asserted by Congress and requirements imposed by state law. Nor has it mattered whether the States have acted through laws of broad general application rather than laws specifically directed towards the governance of industrial relations. Regardless of the mode adopted, to allow the States to control which is the subject of national regulation would create potential frustration of national purposes.

" . . . . . . . . . . . . . . . . . .

" . . . When an activity is arguably subject to section 7 or section 8 of the Act, the States as well as the federal courts

must defer to the exclusive competence of the National Labor Relations Board if the danger of state interference with national policy is to be averted.''

 It is now fairly clear that when the National Labor Relations Board declines to take jurisdiction, state tribunals may act and may apply state law. (See *Kempf* v. *Carpenters & Joiners Local Union No. 1273*, 229 Ore. 337 [367 P.2d 436]; Aaron, *The Labor Management Reporting and Disclosure Act of 1959*, 73 Harv.L.Rev. 1086.)

It has been decided that a state tribunal may assert jurisdiction and apply federal law in an action involving a violation of a labor-management contract (*Smith* v. *Evening News Assn.*, 371 U.S. 195 [83 S.Ct. 267, 9 L.Ed.2d 246]); that a state may award damages where the action is based on violence or threats of violence (*United Construction Workers* v. *Laburnum Construction Corp.*, 347 U.S. 656 [74 S.Ct. 833, 98 L.Ed. 1025]; *International Union U.A.A. & A.I.* v. *Russell*, 356 U.S. 634 [78 S.Ct. 932, 2 L.Ed.2d 1030]); and the states may enjoin such conduct (*Youngdahl* v. *Rainfair, Inc.*, 355 U.S. 131 [78 S.Ct. 206, 2 L.Ed.2d 151]). A state court may also enforce a state prohibition against an agency-shop agreement in an executed collective bargaining agreement (*Retail Clerks Intl. Assn.* v. *Schermerhorn*, 375 U.S. 96 [84 S.Ct. 219, 11 L.Ed.2d 179]); reinstate with back pay an employee discharged in violation of a state union security statute (*Algoma Plywood & V. Co.* v. *Wisconsin Emp. Relations Board*, 336 U.S. 301 [69 S.Ct. 584, 93 L.Ed. 691]); and enforce an arbitration agreement (*Carey* v. *Westinghouse Electric Corp.*, 375 U.S. 261 [84 S.Ct. 401, 11 L.Ed.2d 320]).

However, no Supreme Court case has held that a state may enjoin a libel where the activity was arguably within the protection or prohibition of the National Labor Relations Act. Three decisions have discussed this question. (See *Dump Truck Owners Assn.* v. *Teamsters*, 49 L.R.R.M. 2932 (Cal. Superior Ct. (1962) ); *Wilson-Jacobi, Inc.* v. *Genuth*, 35 Misc.2d 596 [230 N.Y.S.2d 797]; *Blum* v. *International Assn. of Machinists*, 80 N.J. Super. 37 [192 A.2d 842].) Only the last case said the state court had no jurisdiction to entertain a libel action connected with a labor dispute.

The Supreme Court has recently decided two cases involving a union's attempt to organize an employer which are relevant to the questions presented here. In *National Labor*

*Relations Board* v. *Servette, Inc., supra,* 377 U.S. 46 [84 S.Ct. 1098, 12 L.Ed.2d 121], a union was on strike against Servette, a distributor of specialty merchandise sold by retail food chains. The union sought to support the strike by asking the managers of supermarkets to discontinue handling items supplied by Servette. The union warned the store managers that unless they complied with the union's request not to purchase Servette's products handbills would be distributed to the public in front of those stores which refused to cooperate. Servette sought a complaint from the NLRB on the ground that the union's conduct was an unfair labor practice under subsections (i) and (ii) of section 8(b) (4) of the act. The Supreme Court held in part that the threatened action was protected by the provision of section 8(b) (4) which states, "that for the purpose of this paragraph (4) only, nothing contained in such paragraph shall be construed to prohibit publicity, other than picketing, for the purpose of truthfully advising the public . . . that a product or products are produced by an employer with whom the labor organization has a primary dispute and are distributed by another employer. . . . " The court said "The proviso was the outgrowth of a profound Senate concern that the unions' freedom to appeal to the public for support of their case be adequately safeguarded." (377 U.S. 46, 55 [84 S.Ct. 1098, 12 L.Ed.2d 121, 127].)

In *National Labor Relations Board* v. *Fruit & Vegetable Packers, supra,* 377 U.S. 58 [84 S.Ct. 1063, 12 L.Ed.2d 129], a union local on strike against fruit packers and warehouseman picketed the customers' entrances to stores selling the employer's apples. The pickets wore placards and distributed handbills which appealed to the stores' customers, and to the public generally, to refrain from purchasing certain apples. The picketing was peaceful, there was no interference with the employees of the stores or deliverymen, and the customers were not requested not to patronize the stores. The Supreme Court held that the union picketing, confined as it was to persuading customers to cease buying the product of the primary employer, was not a secondary boycott which Congress intended to prohibit under section 8(b) (4) (ii). The court said at page 72 of 377 U.S. [84 S.Ct. 1063, 12 L.Ed.2d 129, at pp. 138, 139]: "When consumer picketing is employed only to persuade customers not to buy the struck product, the union's appeal is closely confined to the primary dispute. The site of the appeal is expanded to include the

premises of the secondary employer, but if the appeal succeeds, the secondary employers' purchases from the struck firms are decreased only because the public has diminished its purchases of the struck product. On the other hand, when consumer picketing is employed to persuade customers not to trade at all with the secondary employer, the latter stops buying the struck product, not because of a falling demand, but in response to pressure designed to inflict injury on his business generally. In such case, the union does more than merely follow the struck product; it creates a separate dispute with the secondary employer.'' The first type of picketing is not a unfair labor practice, the second is.

These two cases show that a union may publicize a dispute at a secondary site for the purpose of inducing the public not to purchase certain products. Such activity is protected.

We have an alleged libel by distribution of a handbill at establishments where the primary employer's products were sold at retail. ▮▮▮ It is clear that a union may peacefully picket at a secondary site for the purpose of persuading the public not to buy a particular product. (*National Labor Relations Board* v. *Fruit & Vegetable Packers, supra*; *National Labor Relations Board* v. *Servette, supra*.) The NLRB recognizes and protects the freedom of a union to appeal to the public for support of its case. (See §§ 8(b) (4) and 8(c) of the act.) ▮▮▮ The activities here arose in connection with an attempt of a local to organize employees of Coca Cola and occurred only at the establishments of secondary employers. The activities condemned by the trial court are arguably protected or condemned by section 7 or section 8 of the act. To permit a state court to step in to regulate a matter which may be the concern of the NLRB interferes with the congressional policy of industrial relations. This is not an isolated incident, nor can it be said merely peripheral to the main issue (the organization of Coca Cola's employees). This is part of the pressure the union is placing on the employer in a campaign. It is a situation where the state court should act only if the NLRB declines jurisdiction.

Since we conclude the activity is arguably within the protection of section 7 or section 8 of the act, the superior court acted in excess of jurisdiction in issuing the injunction. Accordingly, petitioners are entitled to a writ of prohibition to prevent the court from proceeding with the cause. (See

*Greene* v. *Superior Court,* 55 Cal.2d 403 [10 Cal.Rptr. 817, 359 P.2d 249].)

Let a peremptory writ of prohibition issue.

Pierce, P. J., and Friedman, J., concurred.

A petition for a rehearing was denied August 7, 1964, and the petition of the real parties in interest for a hearing by the Supreme Court was denied September 10, 1964.